## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY SNYDER, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 07-1660 |
| | : | |
| MILLERSVILLE UNIVERSITY, J. BARRY | : | JURY TRIAL DEMANDED |
| GIRVIN, DR. JANE S. BRAY, and DR. VILAS | : | |
| A. PRABHU, | : | |
| Defendants | : | |

## AMENDED COMPLAINT

Plaintiff, Stacy Snyder, by and through her undersigned counsel, hereby alleges as follows:

1.     Plaintiff is an adult individual residing at the above-captioned address.

2.     Defendant, Millersville University (hereinafter "MU"), is a public university within the meaning of 24 P.S. §1-101, *et seq.*, with administrative offices at the above-captioned address.   At all times material hereto, Defendant was a recipient of federal financial assistance.

3.     Defendant, Dr. Jane S. Bray, is an adult individual and Dean of MU's School of Education with a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.  She is being sued in both her individual and official capacities.

4.     Defendant, J. Barry Girvin, is an adult individual and supervisor in MU's student-teaching internship program.  He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.   Mr. Girvin is being sued in both his individual and official capacities.

5.     Defendant, Dr. Vilas A. Prabhu, is an adult individual and MU's Provost.  He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-

1

Dockets.Justia.com

0302. Dr. Prabhu is being sued in both his individual and official capacities. Plaintiff hereinafter will refer to Defendants Bray, Girvin and Prabhu collectively as the "individual defendants."

6.    This Honorable Court has jurisdiction over this action pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution as well as 42 U.S.C. Section 1983.

7.    Venue is appropriate in this Honorable Court since the claims set forth herein arose in this Judicial District, and both Plaintiff and District reside herein.

8    Plaintiff attended MU from June, 2002 until May, 2006. After majoring in Biology and English, Plaintiff switched her major to Secondary English Education in MU's School of Education. (Exhibit "A" hereto.) Plaintiff's grade point average was between 3.0 and 3.49, exceeding Defendant's requirement for graduation with an initial teaching certificate in Pennsylvania. (Exhibit "B,", p. 10.)

9.    As a prerequisite to receiving her Bachelor of Science in Education ("BSE"), Plaintiff successfully completed several "field experiences." *Id*. Her first such assignment was at the La Academia Charter School in the spring of 2005. There, Plaintiff achieved the highest marks in all areas, including "professional competencies." (Exhibit "C," p. 1.)

10.    Next, during the fall semester, 2005, Plaintiff completed a field experience teaching grades 10 and 11 at Lampeter-Strasburg High School. On her final evaluation, Plaintiff achieved grades of "outstanding" and "competent" in all areas. (Exhibit "D.")

11.    Also during the fall of 2005, Plaintiff completed a field experience in teaching and writing at Garden Spot High School. There, her supervising teacher, Neil Weidman, lauded Plaintiff as "exceptionally professional" and predicted she "will become an excellent teacher." (Exhibit "E".)

12.    In a letter dated February 2, 2006, John N. Short, Acting Dean at MU, congratulated

2

Plaintiff as "one of [MU's] finest student scholars." (Exhibit "F.")

13.     In or about March, 2006, Plaintiff was named to MU's Dean's List. (Exhibit "G.")

14.     During the spring, 2006 semester, Plaintiff was a student teacher at Conestoga Valley High School ("CV"). There, she taught ninth and twelfth grade English.

15.     At CV, Nicole Reinking was Plaintiff's teacher-advisor, and Deann Buffington was her supervisor. Her internship supervisor at MU was Defendant Girvin.

16.     Mr. Girvin observed Plaintiff in the classroom on March 9, 2006. He noted Plaintiff "prepare an excellent handout" and was "confident about her content and her approach." (Exhibit "H".)

17.     On or about March 17, 2006, Mr. Girvin prepared a "mid-evaluation - English" on Plaintiff. (Exhibit "I" hereto.) Therein, he awarded Plaintiff a "G," the highest mark, for her adherence to the Pennsylvania Professional Code of Ethics. (*Id.*, p. 1.) Mr. Girvin also noted several areas in which Plaintiff needed "significant remediation," including portions of her preparation, teaching performance and approach to student learning. (*Id.*) Importantly, none of the areas identified related to Plaintiff's "professionalism." *Id*.

18     On or about March 20, 2006, Ms. Reinking prepared her own "mid-evaluation - English" on Plaintiff, using the same format. (Exhibit "J.") Ms. Reinking gave Plaintiff grades of "G" and "R," the two highest marks, in professionalism. (*Id.*, p. 1.) She described Plaintiff as "a very organized, punctual student teacher" who "has also shown a commitment to ongoing professional development . . . ." (*Id.*) Ms. Reinking also noted several areas in which Plaintiff needed "significant remediation," including portions of preparation, teaching performance, effect on student learning and English-specific items. Again, none of the areas related to Plaintiff's "professionalism." *(Id.)*

3

19.    On or about March 21, 2006, Mr. Girvin evaluated Plaintiff according to the "Pennsylvania Statewide Evaluation Form for Student Professional Knowledge and Practice (PDE-430.)"    (Exhibit "K;" hereinafter "PDE-430") He awarded Plaintiff a "superior" rating in professionalism, noting she "usually and extensively conducts herself in a very professional manner." (*Id.*, p. 4.)  Mr. Girvin also graded Plaintiff "satisfactory" in "planning and preparation" and "instructional delivery."  He rated Ms. Snyder "unsatisfactory" in "classroom environment." (*Id.*, p. 2.)  Mr. Girvin's overall rating of Ms. Snyder's performance was "satisfactory." (*Id.*, p. 5.)

20.    After her mid-evaluation, Plaintiff's teaching performance improved dramatically.  In a note following his observation of Plaintiff on April 3, 2006, Mr. Girvin observed:

> "Ms. Snyder started a new unit (Macbeth) with a new class.  She has done extensive planning using the Millersville University (CIRQL) process.  The unit plan was well done and this class got the delivery off to a good start.  The lesson plan was excellent." (Exhibit "L.")

21.    Similarly, following a "block" classroom visit on April 6, 2006, Mr. Girvin noted:

> "The good-feeling tone continued with the class.  Ms. Snyder's approach was very business-like and highly organized.  Her lesson plan and supplementary material were excellent." (Exhibit "M".)

22.    After inspecting Plaintiff's second "block" class on April 6, 2006, Mr. Girvin recounted:

> "There was good use of time limits, transitions, and supplementary materials.  Ms. Snyder asked quality stimulus questions.  She gave students enough time to work but kept them busy and on task. . . . There were some quality student questions which she handled well. As in block one, she did a good job with purpose." (Exhibit "N".)

23.    Mr. Girvin also noted his impressions of Plaintiff's teaching on April 18, 2006.  He made ten "glowing" comments, including "great improvement in content" and "excellent CIRQL unit

planning."  (Exhibit "O.")

24.    On or about May 2, 2006, Mr. Girvin prepared a summary of his evaluations of Plaintiff's classroom teaching that semester.  (Exhibit "P.") In it, he rated Plaintiff as "exemplary" in all areas.  Mr. Girvin's evaluation form defines "exemplary" teaching as, *inter alia*:

> "Addresses all questions with constructive in-depth analysis, multiple good ideas that are used in unit plan. . . .  Creative, thoroughly-planned, good variety strategies to promote student inquiry and critical thinking, highly motivational. . . .  Constructive, insightful reflection on teaching clearly connected to evidence of student learning and feedback from others."  (*Id.*)

25.    On May 8, 2006, Plaintiff checked out of school before lunchtime and went home due to sickness.  Later that afternoon, Ms.  Buffington telephoned Plaintiff at home.  She advised Plaintiff that an "issue" had just arisen concerning her "professionalism" as a teacher.  Ms. Buffington then forbade Plaintiff from returning to CV until Thursday, May 11, 2006.  Plaintiff immediately telephoned Mr. Girvin, who refused to disclose any further information.

26.    Plaintiff next spoke with Mr. Girvin on May 10, 2006.  At that time, he explained only that someone delivered a picture of Plaintiff to Ms. Buffington.  Mr. Girvin refused to give Plaintiff any details.  He did tell Plaintiff she may lose her teaching certificate due to the incident.

27.    On or about May 10, 2006, Mr. Girvin prepared Plaintiff's "final evaluation - English." (Exhibit "Q.") In it, Mr. Girvin awarded Plaintiff "superior" or "competent" ratings in all areas except "professionalism."   In that area, Mr. Girvin deemed Plaintiff's performance "unsatisfactory," explaining only:

> "There were errors in judgment that relate to §4(b), 7-8; and §5 of Pennsylvania's Code of Professional Practice and Conduct for Educators."  *Id.*

28.    In his "final evaluation - English," Mr. Girvin neither cited specific examples of Plaintiff's "errors in judgment" nor explained how they violated the above Code.

29.    On May 11, 2006, Plaintiff met with Mr. Girvin, Ms. Reinking and Ms. Buffington to review her final evaluation. Ms. Buffington showed Plaintiff a picture, downloaded without Plaintiff's permission from her private web page at www.myspace.com. No one at the meeting provided Plaintiff with a copy of the photograph in question. However, a similar picture is attached hereto as Exhibit "R."

30.    The undated picture shows Plaintiff at a costume party outside of school hours wearing a party hat and holding a plastic cup. (Exhibit "R") The photograph does not show the cup's contents. Although the attached photograph does not have a caption, Plaintiff believes the photograph Defendants showed her during her expulsion meeting bore the insignia "drunken pirate." Ms. Buffington also showed Plaintiff some text CV personnel downloaded from her web page. The text contained Plaintiff's personal thoughts and opinions. Among other topics, Plaintiff mentioned her decision not to apply for a full-time teaching position at CV.

31.    Ms. Buffington advised Plaintiff that posting the photo, caption and text on her www.myspace.com web page was "unprofessional." She cited no laws, rules, regulations or policies in force either at MU or CV to support this opinion. She claimed that, if students at CV gained access to Plaintiff's private web page, they might have found the information offensive. Ms. Buffington cited no examples of students who actually saw the information.

32.    Ms. Buffington then accused Plaintiff of incompetence and claimed she should have been removed from her student-teaching position months ago. She cited no specific prior transgressions by Plaintiff to support her assertion. No one at either MU or CV ever made such

accusations to Plaintiff before the "drunken pirate" photo came to light.

33.    On or about May 12, 2006, Mr. Girvin prepared a new PDE-430 on Plaintiff.  (Exhibit "S.")  In it, he awarded Plaintiff "superior" marks in "planning and preparation," as well as "satisfactory" grades in "classroom environment" and "instructional delivery."  However, Mr. Girvin lowered Plaintiff's mid-evaluation rating in "professionalism" from "superior" to "unsatisfactory," noting simply:

> "Performance indicators not demonstrated:
>
> Integrity and ethical behavior, professional conduct as stated in Pennsylvania Code of Professional Practice and Conduct for Educators; and local, state and federal, laws and regulations." (Exhibit "S," p. 4.)

34.    Mr. Girvin listed no specific incidents of alleged misconduct by Plaintiff to justify his conclusions.

35.    On or about May 12, 2006, Plaintiff met with Dr. Jane S. Bray, Dean of MU's School of Education.  Dr. Bray accused Plaintiff of promoting underage drinking through her "drunken pirate" photo.  Then, without notice or hearing, Dr. Bray stripped Plaintiff of her BSE degree and teaching certification.

36.    Dr. Bray then informed Plaintiff that MU graciously would "allow" her to graduate with a Bachelor of Arts ("BA") degree.  Throughout her nearly four years at MU, Plaintiff had pursued a BSE degree, not a BA.

37.    On or about May 12, 2006,  Dr. Jane Bray, in her capacity as Dean of MU's School of Education, along with Beverly Schneller and Kimberly McCollum-Clark, prepared a document entitled "Request for Exception to Graduation Requirements."  (Exhibit "T.")  This form bears the

note, "student removed from student teaching - changed degree to BA." *(Id.)*

38.    On or about May 13, 2006, Plaintiff graduated from MU with a BA degree.  Since then, Plaintiff has been unable to obtain the teaching certification she earned at MU during her four years of study there.

39.    Plaintiff has been informed that representatives of CV advised MU officials that CV would not accept any more MU student teachers if MU did not punish Plaintiff swiftly and severely.

40.    Apart from MU's refusal to certify that she satisfactorily completed her student teaching, Plaintiff meets all the requirements for an initial teaching certificate in Pennsylvania. (Exhibit "B," p. 10.)

41.    According to guidelines published by the Pennsylvania Department of Education ("PDE"), in completing form PDE-430, the preparer must justify his or her evaluation as follows:

> "This is a key section as it provides the student teacher with a clear understanding of the evaluator's decision based on observations and other **specific sources of evidence**.  This section also provides **further explanation** of why the student teacher is receiving a particular rating for the category.  The evaluator's comments help to focus the student teacher on his/her specific strengths and areas for improvement.  It is important to write statements that are clear, consistent, and specify key areas for improvement, if required." (Exhibit "U," p. 2 - emphasis added.)

42.    On Plaintiff's final PDE-430, MU lists no "specific sources of evidence" to justify Plaintiff's "unsatisfactory" grade in "professionalism."

43.    Likewise, MU fails to supply "further explanation" on its final PDE-430 sufficient to justify Plaintiff's "particular rating" of unsatisfactory in "professionalism."

44.    Nothing in Pennsylvania's Code of Professional Practice and Conduct for Educators prohibits prospective teachers from posting personal photographs on their private web page.  (Exhibit

"V.")

45. At the time of the "drunken pirate" incident, MU had no policy, practice or procedure prohibiting students from posting photos of themselves on their private web pages.

46. MU's Student Code of Conduct governs the rights and responsibilities of all students attending school there, including Plaintiff, during all times in question. (See Exhibit "W.")

47. Nothing in the Student Code of Conduct in any way prohibits Plaintiff from posting photographs on her private web site. *Id.*

48. The Student Code of Conduct defines "disciplinary sanctions" as including expulsion, suspension and "educational sanction." (Exhibit "W," p. 4.)

49. Each of the following actions by MU constitutes a "disciplinary sanction" against Plaintiff under the Code of Conduct:

A. MU's removal of Plaintiff from its School of Education;

B. MU's refusal to allow Plaintiff to graduate with the BSE degree she earned at MU;

C. MU's insistence that Plaintiff only graduate with a BA degree; and

D. MU's refusal to certify that Plaintiff meets the requirements for an initial teaching certificate in Pennsylvania.

50. According to MU's Student Code of Conduct, students are subject to "disciplinary sanction" when, either on or off campus, they allegedly violate MU's "regulations," including:

A. "Violation of federal, state or local law;"

B. "Allegations of academic dishonesty;"

C. Conduct threatening the welfare of others.

9

51.    In its unsatisfactory evaluation of Plaintiff's "professionalism," MU alleges Plaintiff, in some unspecified way, violated "local, state and federal, laws and regulations." (Exhibit "Q," p. 4.)

52.    In its final PDE-430 form, Defendant alleges Plaintiff engaged in undefined unprofessional and unethical behavior. (*Id.*)

53.    According to the Student Code of Conduct, any student subject to "disciplinary sanctions" is entitled to a hearing before either the "disciplinary board" or the "judicial board." (Exhibit "W," p. 3.)

54.    At such a hearing, a student is entitled to a panoply of due process protections, including the right to question witnesses, examine and submit documents, the assistance of an "advisor," an impartial fact-finder and appeal rights. *Id.*

55.    Defendant never offered Plaintiff a hearing under the Student Code of Conduct to address the charges discussed herein.

56.    By letter dated January 28, 2007, undersigned counsel requested MU provide Plaintiff with an impartial due process hearing in accordance with her constitutional rights as well as the Student Code of Conduct. (See Exhibit "X.") In response, MU offered Plaintiff only an "academic appeal" before Defendant, Dr. Vilas A. Prabhu, MU's Provost and Vice President for Academic Affairs. (Exhibit "Y.")

57.    By letter dated February 16, 2007, Dr. Prahbu advised undersigned counsel that, while counsel may attend the hearing with Plaintiff, he:

> " . . . will not be permitted to directly participate in the proceeding by asking questions, responding to questions, or making arguments. You are free to interact privately with Ms. Snyder as her advisor." (Exhibit

"Z.")

58.    Nothing in its "academic dismissal" policy authorized MU to deny Plaintiff the effective assistance of counsel.  (See Exhibit "AA.")

59.    Nothing in MU's "academic dismissal" policy permitted it to expel Plaintiff from its School of Education for posting a photograph on a private web site.

60.    MU's "academic dismissal" policy provides:

> "A student will *not* be dismissed for academic reasons in any semester that he/she has

> 1.    Been in good academic standing (i.e., not on probation), or

> 2.    Earned a 2.00 or higher semester GPA."  (Exhibit "AA," p. 3.)

61.    MU's "academic dismissal" policy provides that MU may issue a warning letter to underperforming students prior to placing them on academic probation.  (*Id.*)

62.    MU never sent Plaintiff a warning letter apprising her that, due to her alleged academic under-performance, MU may deny her an education degree.

63.    At no time did MU place Plaintiff on academic probation for any reason.

64.    On February 21, 2007, Dr. Prabhu conducted an "academic dismissal" hearing in this matter.  Undersigned counsel attended the hearing with Plaintiff.  However, Dr. Prabhu refused to allow counsel to question either his client or the MU personnel in attendance.  Dr. Prabhu also refused to allow counsel to argue in opposition to Plaintiff's expulsion.

65.    Neither Dr. Prabhu nor any of MU's other attendees presented Plaintiff with a copy of the "drunken pirate" photograph or any other documents in support of Plaintiff's expulsion.

11

66.    During the hearing, none of MU's attendees mentioned any specific instances supporting their general claim that Plaintiff's student-teaching performance was substandard.

67.    By letter dated March 26, 2007, Dr. Prabhu denied Plaintiff's Appeal, observing:

> "Your overall poor performance during student teaching resulting in your ineligibility to receive teaching certification from the Commonwealth. Accordingly, it is my determination that Dr. Bray fairly resolved this academic issue by allowing you to graduate on time with a Bachelor of Arts Degree in English." (See Exhibit "BB.")

68.    At no time did MU offer Plaintiff the opportunity to repeat her student-teaching assignment.

69.    During the hearing, MU presented no documentary evidence supporting the claimed misconduct cited by Dr. Prabhu on page two of his Decision. (*Id.*) No witnesses testified during the hearing in support of such accusations.

## COUNT I - VIOLATION OF 42 U.S.C. SECTION 1983 - FIRST AMENDMENT - FREEDOM OF SPEECH

70.    Plaintiff incorporates the averments in paragraph 1 through 69 above by this reference as if same were fully set forth herein.

71.    Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or law of the United States. *Shuman, et al. v. Penn Manor School District, et al.*, 422 F.3d 141, 146 (3rd Cir. 2005).

72.    At all times material hereto, all Defendants were acting under color of state law, specifically 24 P.S. §20-2001-A, *et seq.*

73.    The First Amendment to the U.S. Constitution provides, in pertinent part: "Congress

shall make no law . . . abridging the freedom of speech, . . ..."

74.    Defendants violated Plaintiff's right to freedom of speech under the First Amendment by expelling Plaintiff from its School of Education for posting a photograph and caption on her private www.myspace.com account, an act of protected free speech.

75.    Plaintiff's website posting did not cause any actual disruption of the school environment to justify limiting her off-campus speech.

76.    Plaintiff's website posting did not present a "true threat" to any person, place or thing either at CV or MU.

77.    Plaintiff's posting the photo and caption in question did not ". . . materially and substantially interfere with the requirements of appropriate discipline in the operation . . ."of either MU or CV. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 509, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969).

78.    Plaintiff's speech was neither lewd nor obscene.

79.    Even if Plaintiff's speech was lewd or obscene, no exceptional circumstances exist to justify punishing Plaintiff for her off-campus speech. *Killion v. Franklin Regional School District*, 136 F.Supp.2d. 446, 457 (W.D.Pa. 2001).

80.    Defendants performed the actions described above pursuant to a policy, practice or custom at MU of violating the free speech rights of disfavored students.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in Plaintiff's favor and against Defendants and further:

A.    Directing Defendants to take all necessary steps to ensure the Commonwealth of Pennsylvania issues Plaintiff an initial teaching certificate;

13

B.    Awarding compensatory damages in excess of $150,000;

C.    Awarding punitive damages against the individual defendants;

D.    Ordering reimbursement for Plaintiff's reasonable attorney's fees as the "prevailing party" in this matter;

E.    Awarding statutory interest and costs of suit; and

F.    Directing such further relief as may be just and proper under the circumstances.

## COUNT II - VIOLATION OF 42 U.S.C. SECTION 1983 - VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS - PROCEDURAL DUE PROCESS

81.    Plaintiff incorporates the averments in paragraph 1 through 80 above by this reference as if same were fully set forth herein.

82.    Students at public schools and universities enjoy a " . . . legitimate entitlement to a public education as a property interest which is protected by the due process clause [of the Constitution] and which may not be taken away for misconduct without adherence to the minimum procedures by that clause." *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 2d 725, 733-734 (1975).

83.    Plaintiff had a property interest in her continued enrollment in MU's School of Education.

84.    Defendants violated Plaintiffs right under the Fifth and Fourteenth Amendments to the U.S. Constitution as well as 42 U.S.C. Section 1983 to procedural due process by:

A.    Failing to notify Plaintiff of the charges against her prior to dismissing her from MU's School of Education;

B.    Failing to offer Plaintiff a due process hearing before dismissing her from MU's

School of Education;

   C. Offering Plaintiff only an "academic hearing" rather than a disciplinary hearing as guaranteed her under the Constitution of the United States and MU's Student Code of Conduct; (Exhibit "W" hereto.)

   D. Failing to offer Plaintiff the opportunity to hear and question witnesses against her;

   E. Failing to offer Plaintiff the chance to examine the evidence and documents used by MU to dismiss her from its School of Education;

   F. Failing to permit Plaintiff to introduce witness testimony;

   G. Failing to allow Plaintiff to describe her version of events prior to dismissing her from the School of Education;

   H. Failing to allow Plaintiff meaningful assistance of counsel during the hearing;

   I. Failing to permit Plaintiff's counsel to address the hearing officer during the hearing;

   J. Failing to permit counsel to question Plaintiff during the hearing;

   K. Failing to permit counsel to question MU's witnesses at the hearing;

   L. Failing to advise all parties, including MU's witnesses, of their responsibility to tell the truth before testifying;

   M. Failing to make an administrative hearing record sufficient to permit meaningful judicial review;

   N. Failing to prepare an adequate Decision with findings of fact and conclusions of law setting forth the basis for Plaintiff's dismissal from the School of Education;

O.      Failing to specify which of MU's, rules, policies or laws Plaintiff violated;

P.      Imposing a sanction (dismissal from the School of Education) against Plaintiff which is completely disproportionate to the violation alleged (posting a photograph on a private web site);

Q.      Failing to consider the full range of available sanctions, including oral reprimand, written reprimand and probation; and

R.      Failing to appoint an impartial arbiter to preside over Plaintiff's due process hearing.

85.     Assuming MU dismissed Plaintiff from its School of Education for academic reasons, which is strongly denied, MU violated Plaintiff's due process rights by, *inter alia*:

A.      Failing to inform Plaintiff of her alleged academic deficiencies prior to her dismissal;

B.      Failing to allow Plaintiff an opportunity to rectify her claimed deficiencies during a probationary period before being dismissed; and

C.      Failing to allow Plaintiff the opportunity to present her case before an impartial arbiter such as a student-faculty committee prior to her dismissal. *Mauriello v. The University of Medicine and Dentistry of New Jersey*, 781 F.2d 46, 52 (3rd Cir. 1986).

86.     Defendants performed the actions described above pursuant to a policy, practice or custom at MU to disregard the due process rights of disfavored students in disciplinary matters.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in Plaintiff's favor and against Defendants and further:

A.      Directing Defendants to take all necessary steps to ensure the Commonwealth

of Pennsylvania issues Plaintiff an initial teaching certificate;

   B.  Awarding compensatory damages in excess of $150,000;

   C.  Awarding punitive damages against the individual defendants;

   D.  Ordering reimbursement for Plaintiff's reasonable attorney's fees as the

"prevailing party" in this matter;

   E.  Awarding statutory interest and costs of suit; and

   F.  Directing such further relief as may be just and proper under the circumstances.

favor and against Defendants and further:

### COUNT III - VIOLATION OF 42 U.S.C. SECTION 1983 -
### FAILURE TO TRAIN (PLAINTIFF v. MILLERSVILLE UNIVERSITY)

  87.  Plaintiff incorporates the averments in paragraph 1 through 86 above by this reference as if same were fully set forth herein.

  88.  Municipalities are liable under 42 U.S.C. Section 1983 where their employees unconstitutionally apply a valid policy due to the municipality's failure to train them in appropriately administering same. *City of Canton, Ohio v. Harris, et al.*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

  89.  Defendant MU is a municipality within the meaning of 24 P.S. §1-101, *et seq.*

  90.  Defendant MU failed to establish any Constitutionally-valid policies and procedures for the discipline and expulsion of students like Plaintiff who post personal photographs and writings in their free time on privately owned websites such as www.myspace.com.

  91.  Defendant MU violated 42 U.S.C. Section 1983 by failing to train its employees:

   A.  in the proper manner to evaluate student teachers for purposes of state

certification;

      B.     in the requirements of form PDE-430;

      C.     in the Constitutional requirements of procedural due process prior to expulsion of students for alleged misconduct; and

      D.     in the First Amendment rights of its students.

92.     MU's failure as described above amounts to deliberate indifference to the rights of persons such as Plaintiff with whom MU's employees come into contact.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in Plaintiff's favor and against Defendants MU and CV and further:

      A.     Directing said Defendants to take all necessary steps to ensure the Commonwealth of Pennsylvania issues Plaintiff an initial teaching certificate;

      B.     Awarding compensatory damages in excess of $150,000;

      C.     Ordering reimbursement for Plaintiff's attorney's fees as the "Prevailing party" in this matter;

      D.     Awarding statutory interest and costs of suit; and

      E.     Directing such further relief as may be just and proper under the circumstances.

**COUNT IV -**
**VIOLATION OF SECTION 2006-A OF THE PUBLIC SCHOOL CODE OF 1949**
**AND TITLE 53 OF THE PENNSYLVANIA CODE**

93.     Plaintiff incorporates the averments in paragraph 1 through 92 above by this reference as if same were fully set forth herein.

94.     The Pennsylvania School Code of 1949 requires MU:

"To establish policies and procedures for the admission **discipline and**

18

**expulsion** of students which shall be consistent with policies of the board and the local council." 24 P.S. §20-2010-A(4) (emphasis added.)

95.    Defendants violated the above provision by, *inter alia*:

A.    Failing to provide substantive rules defining with reasonable specificity the disciplinary offense, penalty and sanction for which Plaintiff was dismissed from MU's School of Education, in violation of 22 Pa. Code §505.1;

B.    Failing to provide procedural guidelines to adjudicate Plaintiff's alleged violations, in violation of 22 Pa. Code §505.1;

C.    Failing to publish and disseminate rules governing posting of photographs on private web pages in student handbooks and other MU publications, in violation of 22 Pa. Code §505.2;

D.    Dismissing Plaintiff without affording her the procedural guarantees set forth in 22 Pa. Code §505.3;

E.    Failing to conduct Plaintiff's dismissal hearing in accordance with 22 Pa. Code §505.4; and

F.    Failing to create and retain a record of Plaintiff's dismissal hearing, in violation of 22 Pa. Code §505.11.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in Plaintiff's favor and against Defendants and further:

A.    Directing Defendants to take all necessary steps to ensure the Commonwealth of Pennsylvania issues Plaintiff an initial teaching certificate;

B.    Awarding compensatory damages in excess of $150,000;

C.    Awarding punitive damages against the individual defendants;

D.    Ordering reimbursement for Plaintiff's reasonable attorney's fees as the "prevailing party" in this matter;

E.    Awarding statutory interest and costs of suit; and

F.    Directing such further relief as may be just and proper under the circumstances.

### COUNT V -
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (PLAINTIFF v. DEFENDANTS GIRVIN, BRAY AND PRABHU)

96.    Plaintiff incorporates the averments in paragraph 1 through 95 above by this reference as if same were fully set forth herein.

97.    The intentional misconduct of Defendants Girvin, Bray and Prabhu described herein was so outrageous in character, and so extreme in degree that it extended beyond the bounds of decency and is utterly intolerable in a civilized society. *See Cox v. Keystone Carbon Co., et al.*, 861 F. 2d 390, 395 (3rd Cir. 1988).

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in Plaintiff's favor and against Defendant MU and further:

A.    Directing said Defendant to take all necessary steps to ensure the Commonwealth of Pennsylvania issues Plaintiff an initial teaching certificate;

B.    Awarding compensatory damages in excess of $150,000;

C.    Ordering reimbursement for Plaintiff's attorney's fees as the "Prevailing party" in this matter;

D.    Awarding statutory interest and costs of suit;

E.    Punitive damages; and

F.    Directing such further relief as may be just and proper under the circumstances.

## COUNT VI - BREACH OF CONTRACT
## (PLAINTIFF v. MILLERSVILLE UNIVERSITY)

98.     Plaintiff incorporates the averments in paragraph 1 through 97 above by this reference as if same were fully set forth herein.

99.     The relationship between a student and an institution of higher learning such as MU is contractual. *Ross v. Pennsylvania State University*, 445 F.Supp. 147, 152 (M.D. Pa. 1978); *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955).

100.     Pursuant to this contract, Plaintiff has a reasonable expectation that, if she performed the required work in a satisfactory manner and paid her tuition and fees, MU would award her the degree she sought. (*Id.*)

101.     In fulfillment of this contract, Plaintiff, *inter alia*:

A.     Attended MU from the fall of 2002 until the spring of 2006;

B.     Paid all required tuition and fees;

C.     Performed all her schoolwork in a satisfactory manner, as shown by her Praxis scores, her making the Dean's List and her citation as "one of [MU's] finest scholars (Exhibits "A", "E" and "F");

D.     Compiled sufficient credits and grades to graduate from MU with a BSE Degree.

102.     MU breached its contract with Plaintiff by:

A.     Violating Plaintiff's civil rights as set forth in the preceding counts; and

B.     Awarding Plaintiff only a BA Degree, not the BSE Degree she earned.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order in

Plaintiff's favor and against MU and further:

      A.     Directing MU to refund to Plaintiff all tuition and fees she paid during the time she attended MU;

      B.     Awarding statutory interest and costs of suit; and

      C.     Directing such further relief as may be just and proper under the circumstances.

Dated:    5/11/07                  **LAW OFFICE OF MARK W. VOIGT**

                                      */Mark W. Voigt/*
                                      Validation of Signature Code #MWV6003

                                  _____

                By:      **MARK W. VOIGT, ESQUIRE**
                                      Plymouth Meeting Executive Campus
                                      Suite 400
                                      600 West Germantown Pike
                                      Plymouth Meeting, PA 19462
                                      (610) 940-1709
                                      (Attorney for Plaintiff)