## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY SNYDER, | : | |
|       Plaintiff | : | CIVIL ACTION |
| | : | |
|   v. | : | NO.: 07-1660 |
| | : | |
| MILLERSVILLE UNIVERSITY, J. BARRY | : | |
| GIRVIN, DR. JANE S. BRAY and DR. | : | JURY TRIAL DEMANDED |
| VILAS A. PRABHU, in their individual and | : | |
| official capacities, | : | |
|       Defendants | : | |

## SECOND AMENDED COMPLAINT

Plaintiff, Stacy Snyder, by and through her undersigned counsel, hereby alleges as follows:

### PARTIES

1.      Plaintiff is an adult individual residing at the above-captioned address.  At all times material hereto, Plaintiff was a student at Defendant, Millersville University (hereinafter "MU").

2.      MU is a public university within the meaning of 24 U.S.C. §1-101, *et seq*., with administrative offices at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.  At all times relevant hereto, MU was a recipient of federal financial assistance.

3.      Defendant, Dr. Jane S. Bray ("Bray"), is an adult individual and Dean of MU's School of Education with a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.  She is being sued in her individual and official capacities.

4.      Defendant, J. Barry Girvin ("Girvin"), is an adult individual and supervisor in MU's student-teaching internship program.  He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.  Girvin is being sued in his individual and official

1

capacities.

5.      Defendant, Dr. Vilas A. Prabhu ("Prabhu"), is an adult individual and MU's Provost. He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302.  Prabhu is being sued in his individual and official capacities.

6.      With respect to all facts and violations alleged in this complaint, all defendants at all times acted under color of state law.

## JURISDICTION AND VENUE

7.      This Honorable Court has jurisdiction over this action pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution as well as 22 U.S.C. §§ 1331 and 1343, 42 U.S.C. Section 1983 and common law.  Supplemental jurisdiction over the pendent state law claims is proper pursuant to 28 U.S.C. §1367(a) and common law.

8.      Venue is appropriate in this Honorable Court since the claims set forth herein arose in this Judicial District, and both Plaintiff and Defendants herein.

## ALLEGATIONS OF FACT

9.      Plaintiff attended MU from June, 2002 until May, 2006.  After majoring in Biology and English, Plaintiff switched her major to Secondary English Education in MU's School of Education.  (Exhibit "A" hereto.)  Plaintiff's grade point average was between 3.0 and 3.49, exceeding MU's requirement for graduation with an initial teaching certificate in Pennsylvania. (Exhibit "B,", p. 10.)

10.      As a prerequisite to receiving her Bachelor of Science in Education ("BSE"), Plaintiff successfully completed several "field experiences."  *Id*.  Her first such assignment was at the La Academia Charter School in the spring of 2005.  There, Plaintiff achieved the highest marks in all

2

areas, including "professional competencies."  (Exhibit "C," p. 1.)

11.     Next, during the fall semester, 2005, Plaintiff completed a field experience teaching grades 10 and 11 at Lampeter-Strasburg High School. On her final evaluation, Plaintiff achieved grades of "outstanding" and "competent" in all areas.  (Exhibit "D.")

12.     Also during the fall of 2005, Plaintiff completed a field experience in teaching and writing at Garden Spot High School.  There, her supervising teacher, Neil Weidman, lauded Plaintiff as "exceptionally professional" and predicted she "will become an excellent teacher."  (Exhibit "E".)

13.     In a letter dated February 2, 2006, John N. Short, Acting Dean at MU, congratulated Plaintiff as "one of [MU's] finest student scholars."  (Exhibit "F.")

14.     In or about March, 2006, Plaintiff was named to MU's Dean's List.  (Exhibit "G.")

15.     During the spring, 2006 semester, Plaintiff was a student teacher at Conestoga Valley High School ("CV").  There, she taught ninth and twelfth grade English.  At CV, Nicole Reinking was Plaintiff's teacher-advisor, and Deann Buffington was her supervisor.  Her internship supervisor at MU was Girvin.

16.     Girvin (in his individual capacity) observed Plaintiff in the classroom on March 9, 2006.  He noted Plaintiff "prepare an excellent handout" and was "confident about her content and her approach."  (Exhibit "H".)

17.     On or about March 17, 2006, Girvin (in his individual capacity) prepared a "mid-evaluation - English" on Plaintiff.  (Exhibit "I" hereto.)  Therein, he awarded Plaintiff a "G," the highest mark, for her adherence to the Pennsylvania Professional Code of Ethics.  (*Id.*, p. 1.)  Girvin also noted several areas in which Plaintiff needed "significant remediation," including portions of her preparation, teaching performance and approach to student learning.  (*Id.*)  Importantly, none of the

areas identified related to Plaintiff's "professionalism." *Id*.

18.    On or about March 20, 2006, Reinking prepared her own "mid-evaluation - English" on Plaintiff, using the same format. (Exhibit "J.") Reinking gave Plaintiff grades of "G" and "R," the two highest marks, in professionalism. (*Id.*, p. 1.) She described Plaintiff as "a very organized, punctual student teacher" who "has also shown a commitment to ongoing professional development . . . ." (*Id.*) Reinking also noted several areas in which Plaintiff needed "significant remediation," including portions of preparation, teaching performance, effect on student learning and English-specific items. Again, none of the areas related to Plaintiff's "professionalism." *(Id.)*

19.    On or about March 21, 2006, Girvin (in his individual capacity) evaluated Plaintiff according to the "Pennsylvania Statewide Evaluation Form for Student Professional Knowledge and Practice (PDE-430.)" (Exhibit "K;" hereinafter "PDE-430") He awarded Plaintiff a "superior" rating in professionalism, noting she "usually and extensively conducts herself in a very professional manner." (*Id.*, p. 4.)

20.    Girvin also graded Plaintiff "satisfactory" in "planning and preparation" and "instructional delivery." He rated Plaintiff "unsatisfactory" in "classroom environment." (*Id.*, p. 2.) Girvin's overall rating of her performance was "satisfactory." (*Id.*, p. 5.)

21.    After her mid-evaluation, Plaintiff's teaching performance improved dramatically. In a note following his observation of Plaintiff on April 3, 2006, Girvin (in his individual capacity) observed:

> "Ms. Snyder started a new unit (Macbeth) with a new class. She has done extensive planning using the Millersville University (CIRQL) process. The unit plan was well done and this class got the delivery off to a good start. The lesson plan was excellent." (Exhibit "L.")

4

22.    Similarly, following a "block" classroom visit on April 6, 2006, Girvin (in his individual capacity) noted:

> "The good-feeling tone continued with the class. Ms. Snyder's approach was very business-like and highly organized. Her lesson plan and supplementary material were excellent." (Exhibit "M".)

23.    After inspecting Plaintiff's second "block" class on April 6, 2006, Girvin (in his individual capacity) recounted:

> "There was good use of time limits, transitions, and supplementary materials. Ms. Snyder asked quality stimulus questions. She gave students enough time to work but kept them busy and on task. . . . There were some quality student questions which she handled well. As in block one, she did a good job with purpose." (Exhibit "N".)

24.    Girvin (in his individual capacity) also noted his impressions of Plaintiff's teaching on April 18, 2006. He made ten "glowing" comments, including "great improvement in content" and "excellent CIRQL unit planning." (Exhibit "O.")

25.    On or about May 2, 2006, Girvin (in his individual capacity) prepared a summary of his evaluations of Plaintiff's classroom teaching that semester. (Exhibit "P.") In it, he rated Plaintiff "exemplary" in all areas. Girvin's evaluation form defines "exemplary" teaching as, *inter alia*:

> "Addresses all questions with constructive in-depth analysis, multiple good ideas that are used in unit plan. . . . Creative, thoroughly-planned, good variety strategies to promote student inquiry and critical thinking, highly motivational. . . . Constructive, insightful reflection on teaching clearly connected to evidence of student learning and feedback from others." (*Id.*)

26.    On May 8, 2006, Plaintiff checked out of school before lunchtime and went home due to sickness. Later that afternoon, Buffington telephoned Plaintiff at home. She advised Plaintiff that an "issue" had just arisen concerning her "professionalism" as a teacher. Buffington then forbade

Plaintiff from returning to CV until Thursday, May 11, 2006. Plaintiff immediately telephoned Girvin, who, in his individual capacity, refused to disclose any further information.

27.    Plaintiff next spoke with Girvin (in his individual capacity) on May 10, 2006. At that time, he explained only that someone delivered a picture of Plaintiff to Buffington. Girvin refused to give Plaintiff any details. He did tell Plaintiff she may lose her teaching certificate due to the incident.

28.    On or about May 10, 2006, Girvin, in his individual capacity, prepared Plaintiff's "final evaluation - English." (Exhibit "Q.") In it, Girvin awarded Plaintiff "superior" or "competent" ratings in all areas except "professionalism." In that area, Girvin deemed Plaintiff's performance "unsatisfactory," explaining only:

> "There were errors in judgment that relate to §4(b), 7-8; and §5 of Pennsylvania's Code of Professional Practice and Conduct for Educators." *Id.*

29.    In his "final evaluation - English," Girvin neither cited specific examples of Plaintiff's "errors in judgment" nor explained how they violated the above Code.

30.    On May 11, 2006, Plaintiff met with Girvin (in his individual capacity), Reinking and Buffington to review her final evaluation. Buffington showed Plaintiff a picture, downloaded without Plaintiff's permission from her private web page at www.myspace.com. No one at the meeting provided Plaintiff with a copy of the photograph in question. However, a similar picture is attached hereto as Exhibit "R."

31.    The undated picture shows Plaintiff at a costume party outside of school hours wearing a party hat and holding a plastic cup. (Exhibit "R") The photograph does not show the cup's contents. Although the attached photograph does not have a caption, Plaintiff believes the

photograph Defendants showed her during her expulsion meeting bore the insignia "drunken pirate." Buffington also showed Plaintiff some text CV personnel downloaded from her web page. The text contained Plaintiff's personal thoughts and opinions. Among other topics, Plaintiff mentioned her decision not to apply for a full-time teaching position at CV.

32.    Buffington advised Plaintiff that posting the photo, caption and text on her www.myspace.com web page was "unprofessional." She cited no laws, rules, regulations or policies in force either at MU or CV to support this opinion. She claimed that, if students at CV gained access to Plaintiff's private web page, they might have found the information offensive. Buffington cited no examples of students who actually saw the information.

33.    Buffington then accused Plaintiff of incompetence and claimed she should have been removed from her student-teaching position months ago. She cited no specific prior transgressions by Plaintiff to support her assertion. No one at either MU or CV ever made such claims to Plaintiff before the "drunken pirate" photo came to light..

34.    On or about May 12, 2006, Girvin (in his individual capacity), after consultation with Bray (in her individual capacity), prepared a new PDE-430 on Plaintiff. (Exhibit "S.") In it, they awarded Plaintiff "superior" marks in "planning and preparation," as well as "satisfactory" grades in "classroom environment" and "instructional delivery." However, Girvin and Bray lowered Plaintiff's mid-evaluation rating in "professionalism" from "superior" to "unsatisfactory," noting simply:

> "Performance indicators not demonstrated:
>
> Integrity and ethical behavior, professional conduct as stated in Pennsylvania Code of Professional Practice and Conduct for Educators; and local, state and federal, laws and regulations." (Exhibit "S," p. 4.)

7

35.    Girvin and Bray listed no specific incidents of alleged misconduct by Plaintiff to justify his conclusions.

36.    On or about May 12, 2006, Plaintiff met with Bray, in her individual capacity.  Bray accused Plaintiff of promoting underage drinking through her "drunken pirate" photo.  Without notice or hearing, Bray informed Plaintiff she would not receive the BSE degree and teaching certification she earned.

37.    Bray then told Plaintiff that she graciously would "allow" her to graduate with a Bachelor of Arts ("BA") degree.  Throughout her nearly four years at MU, Plaintiff had pursued a BSE degree, not a BA.

38.    On or about May 12, 2006,  Bray, in collaboration with Girvin (in their official capacities) issued a document entitled "Request for Exception to Graduation Requirements." (Exhibit "T.") This form bears the note, "student removed from student teaching - changed degree to BA." *(Id.)*

39.    On or about May 13, 2006, Plaintiff graduated from MU with a BA degree.  Since then, Plaintiff has been unable to obtain from PDE the teaching certification she earned at MU during her four years of study there.

40.    Plaintiff has been informed and believes that representatives of CV advised Bray, Girvin and/ or Prabhu (in their individual capacities) that CV would not accept any more MU student teachers if they did not punish Plaintiff swiftly and severely.

41.    Apart from Bray's and Girvin's refusal to certify that she satisfactorily completed her student teaching, Plaintiff meets all the requirements for an initial teaching certificate in Pennsylvania. (Exhibit "B," p. 10.)

42.     According to guidelines published by the Pennsylvania Department of Education ("PDE"), in completing form PDE-430, the preparer must justify his or her evaluation as follows:

> "This is a key section as it provides the student teacher with a clear understanding of the evaluator's decision based on observations and other **specific sources of evidence**.  This section also provides **further explanation** of why the student teacher is receiving a particular rating for the category.  The evaluator's comments help to focus the student teacher on his/her specific strengths and areas for improvement.  It is important to write statements that are clear, consistent, and specify key areas for improvement, if required."
> (Exhibit "U," p. 2 - emphasis added.)

43.     On Plaintiff's final PDE-430, Bray and Girvin (in their individual capacities) list no "specific sources of evidence" to justify Plaintiff's "unsatisfactory" grade in "professionalism."

44.     Likewise, Bray and Girvin fail to supply "further explanation" on its final PDE-430 sufficient to justify Plaintiff's "particular rating" of unsatisfactory in "professionalism."

45.     Nothing in Pennsylvania's Code of Professional Practice and Conduct for Educators ("CPP") prohibits prospective teachers from posting personal photographs on their private web page. (Exhibit "V.")

46.     At the time of the "drunken pirate" incident, MU had no policy, practice or procedure prohibiting students from posting photos of themselves on their private web pages.

47.     MU's Student Code of Conduct ("Student Code") governs the rights and responsibilities of all students attending school there, including Plaintiff, during all times in question. (See Exhibit "W.")

48.     Nothing in the Student Code in any way prohibits Plaintiff from posting photographs on her private web site.  *Id.*

49.     The Student Code defines "disciplinary sanctions" as including expulsion, suspension

9

and "educational sanction."  (Exhibit "W," p. 4.)

50.      Each of the following actions by Bray and Girvin, in their individual and official capacity, constitutes a "disciplinary sanction" against Plaintiff under the Student Code:

      A.      Removal of Plaintiff from its School of Education;

      B.      Refusal to allow Plaintiff to graduate with the BSE degree she earned at MU;

      C.      Insistence that Plaintiff only graduate with a BA degree; and

      D.      Refusal to certify that Plaintiff meets the requirements for an initial teaching certificate in Pennsylvania.

51.      According to the Student Code, students are subject to "disciplinary sanction" when, either on or off campus, they allegedly violate MU's "regulations," including:

      A.      "Violation of federal, state or local law;"

      B.      "Allegations of academic dishonesty;"

      C.      Conduct threatening the welfare of others.

52.      In its unsatisfactory evaluation of Plaintiff's "professionalism," Bray and Girvin, in their individual capacities, allege Plaintiff, in some unspecified way, violated "local, state and federal, laws and regulations."  (Exhibit "Q," p. 4.)

53.      In its final PDE-430 form, Bray and Girvin, in their individual capacities, allege Plaintiff engaged in undefined unprofessional and unethical behavior.  (*Id.*)

54.      According to the Student Code, any student subject to "disciplinary sanctions" is entitled to a hearing before either the "disciplinary board" or the "judicial board."  (Exhibit "W," p. 3.)

55.      At this hearing, a student is entitled to a panoply of due process protections, including

the right to question witnesses, examine and submit documents, the assistance of an "advisor," an impartial fact-finder and appeal rights. *Id.*

56.    Bray, Girvin and Prabhu, in their individual capacities, never offered Plaintiff a disciplinary hearing under the Student Code to address the charges discussed herein.

57.    By letter dated January 28, 2007, undersigned counsel requested MU provide Plaintiff with an impartial due process hearing in accordance with her constitutional rights as well as the Student Code of Conduct.  (See Exhibit "X.") In response, Bray, Girvin and Prabhu, in their individual capacities, offered Plaintiff only an "academic appeal" before Prabhu.  (Exhibit "Y.")

58.    By letter dated February 16, 2007, Prahbu, in his individual capacity, (after consultation with Bray and Girvin [in their individual capacities]), advised counsel that, while he may attend the hearing with Plaintiff, he:

> " . . . will not be permitted to directly participate in the  proceeding by asking questions, responding to questions, or making arguments.  You are free to interact privately with Ms. Snyder as her advisor." (Exhibit "Z.")

59.    Nothing in MU's "academic dismissal" policy authorized Prabhu, Bray and Girvin (in their individual capacities), to deny Plaintiff the effective assistance of counsel.  (See Exhibit "AA.")

60.    Nothing in MU's "academic dismissal" policy permitted Prabhu, Bray and Girvin (in their individual capacities) to expel Plaintiff from its School of Education for posting a photograph on a private web site.

61.    MU's "academic dismissal" policy provides:

> "A student will *not* be dismissed for academic reasons in any semester that he/she has
>
> 1.    Been in good academic standing (i.e., not on

probation), or

2.　　Earned a 2.00 or higher semester GPA."   (Exhibit
　　　"AA," p. 3.)

62.　　MU's "academic dismissal" policy permits its officials to issue a warning letter to underperforming students prior to placing them on academic probation.  (*Id.*)

63.　　Bray, Girvin and Prabhu, in their individual capacities, never sent Plaintiff a warning letter apprising her that, due to her alleged academic under-performance, MU may deny her an education degree.

64.　　At no time did Bray, Girvin and Prabhu, in their individual capacities,  place Plaintiff on academic probation for any reason.

65.　　On February 21, 2007, Prabhu and Bray, in their individual capacities, in consultation with Girvin (in his individual capacity) conducted an "academic dismissal" hearing in this matter. Counsel attended the hearing with Plaintiff.  However, Prabhu and Bray refused to allow counsel to question either his client or any MU personnel.  Prabhu and Bray also refused to allow counsel to speak, much less argue in opposition to their expulsion of Plaintiff.

66.　　Prabhu and Bray, in their individual capacities, refused to present Plaintiff with a copy of the "drunken pirate" photograph or any other documents in support of Plaintiff's expulsion.

67.　　During the hearing, neither Prabhu nor Bray mentioned any specific instances supporting their general claim that Plaintiff's student-teaching performance was substandard.

68.　　By letter dated March 26, 2007, Prabhu, in his individual capacity, acting in concert with Bray and Girvin, in their individual capacities, denied Plaintiff's appeal, observing:

"Your overall poor performance during student teaching resulting in
your  ineligibility  to  receive  teaching  certification  from  the

12

Commonwealth.  Accordingly, it is my determination that Dr. Bray fairly resolved this academic issue by allowing you to graduate on time with a Bachelor of Arts Degree in English."  (See Exhibit "BB.")

69.     At no time did Prabhu, Bray or Girvin, in their individual capacities, offer Plaintiff the opportunity to repeat her student-teaching assignment.

70.     During the hearing, Prabhu and Bray, in their individual capacities, presented no documentary evidence supporting the claimed misconduct cited by Prabhu on page two of his Decision.  (*Id.*)  No witnesses testified  during the hearing in support of such accusations.

71.     At all times material hereto, Prabhu, Bray and Girvin, in their individual capacities, acted collectively to deprive Plaintiff of her Constitutional rights to freedom of speech and due process of law.  The reasons proffered by said Defendants for their actions against Plaintiff were merely a pretext for their Constitutional violations.

72.     Despite knowledge and adequate opportunity to learn of the misconduct of the individual defendants and to remedy such misconduct, MU adopted, approved and ratified the acts, omissions and misconduct described herein.

73.     The individual defendants, or those acting on their behalf, in their individual and official capacities, took all actions described herein, including the denial of Plaintiff's BSE and teaching certification, under color of state law.  Said actions deprived Plaintiff of those rights secured for her by the Constitution and laws of the United States and the State of Pennsylvania, in particular the Free Speech and the Due Process Clauses of the First, Fifth and Fourteenth Amendments.

74.     The individual defendants, in both their individual and official capacities, carried out the misconduct described herein in retaliation for Plaintiff's exercise of her civil rights as secured for her by the Free Speech and Due Process Clauses of the First, Fifth and Fourteenth Amendments.

13

75.    The actions by Bray, Girvin and Prabhu (in their individual capacities only) as described herein were intentional, malicious, willful, wanton and in gross and reckless disregard of Plaintiffs' rights under the Constitution as well as state and federal law.

### COUNT I - VIOLATION OF 42 U.S.C. SECTION 1983 - FIRST AMENDMENT - FREEDOM OF SPEECH (Plaintiff v. Bray, Girvin and Prabhu in Their Individual Capacities)

76.    Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

77.    Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or law of the United States.  *Shuman, et al. v. Penn Manor Sch. Dist., et al.*, 422 F.3d 141, 146 (3rd Cir. 2005).

78.    The First Amendment to the U.S. Constitution provides, in pertinent part: "Congress shall make no law . . . abridging the freedom of speech, . . .."

79.    Defendants, Bray, Girvin and Prabhu, in their individual capacities, violated Plaintiff's right to freedom of speech under the First Amendment by committing the wrongful acts described in the preceding paragraphs.

80.    At all times material hereto, Bray, Girvin and Prabhu were policy makers at MU.

81.    The acts and omissions by Bray, Girvin and Prabhu (in their individual capacities) constituted a custom, practice and policy of deliberate indifference to Plaintiff's Constitutional rights secured by the First Amendment.

82.    Plaintiff's website posting did not cause any actual disruption of the school environment to justify limiting her off-campus speech.

14

83.    Plaintiff's website posting did not present a "true threat" to any person, place or thing either at CV or MU.

84.    Plaintiff's posting the photo and caption in question did not ". . . materially and substantially interfere with the requirements of appropriate discipline in the operation . . ."of either MU or CV.  *Tinker v. Des Moines Indep. Community Sch. Dist*, 393 U.S. 503, 509, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969).

85.    Plaintiff's speech was neither lewd nor obscene.

86.    Even if Plaintiff's speech was lewd or obscene, no exceptional circumstances exist to justify punishing Plaintiff for her off-campus speech.  *Killion v. Franklin Regional Sch. Dist.*, 136 F.Supp.2d. 446, 457 (W.D.Pa. 2001).

## COUNT II - VIOLATION OF 42 U.S.C. SECTION 1983 -
## FIRST AMENDMENT - FREEDOM OF SPEECH
### (Plaintiff v. Bray, Girvin and Prabhu in Their Official Capacities)

87.    Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

88.    Defendants, Bray, Girvin and Prabhu, in their official capacities, violated Plaintiff's right to freedom of speech under the First Amendment by:

    A.    Denying Plaintiff her BSE; and

    B.    Refusing to issue the necessary documentation to PDE so Plaintiff can obtain her teaching certificate.

## COUNT III - VIOLATION OF 42 U.S.C. SECTION 1983 -
## VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS -
## PROCEDURAL DUE PROCESS
### (Plaintiff v. Bray, Girvin and Prabhu in Their Individual Capacities)

89.     Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

90.     Students at public schools and universities enjoy a " . . . legitimate entitlement to a public education as a property interest which is protected by the due process clause [of the Constitution] and which may not be taken away for misconduct without adherence to the minimum procedures by that clause." *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 2d 725, 733-734 (1975).

91.     Plaintiff had a property interest in her continued enrollment in MU's School of Education.

92.     Defendants, Bray, Girvin and Prabhu, in their individual capacities, violated Plaintiff's rights under the Fifth and Fourteenth Amendments to the U.S. Constitution as well as 42 U.S.C. Section 1983 to procedural due process by:

A.     Failing to notify Plaintiff of the charges against her prior to dismissing her from MU's School of Education;

B.     Failing to offer Plaintiff a due process hearing before dismissing her from MU's School of Education;

C.     Offering Plaintiff only an "academic hearing" rather than a disciplinary hearing as guaranteed her under the Constitution of the United States and MU's Student Code of Conduct; (Exhibit "W" hereto.)

D.     Failing to offer Plaintiff the opportunity to hear and question witnesses against her;

E.     Failing to offer Plaintiff the chance to examine the evidence and documents used

by MU to dismiss her from its School of Education;

       F.     Failing to permit Plaintiff to introduce witness testimony;

       G.     Failing to allow Plaintiff to describe her version of events prior to dismissing her from the School of Education;

       H.     Failing to allow Plaintiff meaningful assistance of counsel during the hearing;

       I.     Failing to permit Plaintiff's counsel to address the hearing officer during the hearing;

       J.     Failing to permit counsel to question Plaintiff during the hearing;

       K.     Failing to permit counsel to question MU's witnesses at the hearing;

       L.     Failing to advise all parties, including MU's witnesses, of their responsibility to tell the truth before testifying;

       M.     Failing to make an administrative hearing record sufficient to permit meaningful judicial review;

       N.     Failing to prepare an adequate Decision with findings of fact and conclusions of law setting forth the basis for Plaintiff's dismissal from the School of Education;

       O.     Failing to specify which of MU's, rules, policies or laws Plaintiff violated;

       P.     Imposing a sanction (dismissal from MU's School of Education and denial of Plaintiff's teaching certificate) against Plaintiff which is completely disproportionate to the violation alleged (posting a photograph on a private web site);

       Q.     Failing to consider the full range of available sanctions, including oral reprimand, written reprimand and probation; and

       R.     Failing to appoint an impartial arbiter to preside over Plaintiff's due process

hearing.

93.    The acts and omissions by Bray, Girvin and Prabhu, in their individual capacities, constituted a custom, practice and policy of deliberate indifference to Plaintiff's Constitutional rights secured by the Fifth and Fourteenth Amendments.

94.    Assuming Defendants, Bray, Prabhu and Girvin, in their individual capacities, dismissed Plaintiff from its School of Education for academic reasons, which is strongly denied, MU violated Plaintiff's due process rights by, *inter alia*:

A.    Failing to inform Plaintiff of her alleged academic deficiencies prior to her dismissal;

B.    Failing to allow Plaintiff an opportunity to rectify her claimed deficiencies during a probationary period before being dismissed; and

C.    Failing to allow Plaintiff the opportunity to present her case before an impartial arbiter such as a student-faculty committee prior to her dismissal. *Mauriello v. Univ. of Medicine and Dentistry of New Jersey*, 781 F.2d 46, 52 (3rd Cir. 1986).

**COUNT IV -**
**VIOLATION OF SECTION 2006-A OF THE PUBLIC SCHOOL CODE OF 1949**
**AND TITLE 53 OF THE PENNSYLVANIA CODE**
**(Plaintiff v. Bray, Girvin and Prabhu in Their Individual Capacities)**

95.    Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

96.    The Pennsylvania School Code of 1949 requires all state universities, including MU:

"To establish policies and procedures for the admission **discipline and expulsion** of students which shall be consistent with policies of the board and the local council."  24 P.S. §20-2010-A(4) (emphasis added.)

18

97.     Defendants, Bray, Girvin and Prabhu, in their individual capacities, violated the above provision by, *inter alia*:

A.     Failing to provide substantive rules defining with reasonable specificity the disciplinary offense, penalty and sanction for which Plaintiff was dismissed from MU's School of Education, in violation of 22 Pa. Code §505.1;

B.     Failing to provide procedural guidelines to adjudicate Plaintiff's alleged violations, in violation of 22 Pa. Code §505.1;

C.     Failing to publish and disseminate rules governing posting of photographs on private web pages in student handbooks and other MU publications, in violation of 22 Pa. Code §505.2;

D.     Dismissing Plaintiff without affording her the procedural guarantees set forth in 22 Pa. Code §505.3;

E.     Failing to conduct Plaintiff's dismissal hearing in accordance with 22 Pa. Code §505.4; and

F.     Failing to create and retain a record of Plaintiff's dismissal hearing, in violation of 22 Pa. Code §505.11.

## COUNT V -
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. Defendants Girvin, Bray and Prabhu, in Their Individual Capacities)

98.     Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

99.     The intentional misconduct of Defendants Girvin, Bray and Prabhu, in their individual capacities, as described in the preceding paragraphs, was so outrageous in character, and so extreme

in degree, that it extended beyond the bounds of decency and is utterly intolerable in a civilized society. *See Cox v. Keystone Carbon Co., et al.*, 861 F. 2d 390, 395 (3rd Cir. 1988).

## COUNT VI - BREACH OF CONTRACT
## (PLAINTIFF v. MILLERSVILLE UNIVERSITY)

100.    Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

101.    The relationship between a student and a public institution of higher learning such as MU is contractual. *Ross v. Pennsylvania State Univ.*, 445 F.Supp. 147, 152 (M.D. Pa. 1978); *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955).

102.    Pursuant to this contract, Plaintiff has a reasonable expectation that, if she performed the required work in a satisfactory manner and paid her tuition and fees, MU would:

        A.    Award her the BSE degree she sought; and

        B.    Take all necessary steps to ensure PDE issued Plaintiff her teaching certificate.

103.    In fulfillment of this contract, Plaintiff, *inter alia*:

        A.    Attended MU from the fall of 2002 until the spring of 2006;

        B.    Paid all required tuition and fees;

        C.    Performed all her schoolwork in a satisfactory manner, as shown by her Praxis scores, her making the Dean's List and her citation as "one of [MU's] finest scholars (Exhibits "A", "E" and "F");

        D.    Compiled sufficient credits and grades to graduate from MU with a BSE degree and obtain her teaching certificate from PDE.

104.    MU, through its employees, Bray, Prabhu and Girvin, breached its contract with

Plaintiff by:

      A.      Awarding Plaintiff only a BA Degree, not the BSE Degree she earned; and

      B.      Refusing to complete the necessary documents so PDE would issue Plaintiff the teaching certificate she earned.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

      A.      Injunctive relief against Defendants, Bray, Prabhu and Girvin, in their official capacities, directing them to withdraw Plaintiff's BA and issue her the BSE she earned;

      B.      Injunctive relief against Defendants, Bray, Prabhu and Girvin, in their official capacities, directing them to take all necessary steps to ensure PDE issues Plaintiff the initial teaching certificate she earned;

      C.      Compensatory damages against Defendants, Bray, Girvin and Prabhu, jointly and severally, in their individual capacities, in excess of $150,000;

      D.      Punitive damages against Defendants, Bray, Girvin and Prabhu, in their individual capacities;

      E.      Under Count VI (Breach of Contract) only, an order directing MU to refund to Plaintiff all tuition and fees she paid during the time she attended college there;

      F.      Reasonable costs and attorney's fees incurred in bringing this matter;

      G.      Pre- and post-judgment interest as allowed by law; and

      H.      Such further relief as the Court deems just and proper.

Dated:_____                    **LAW OFFICE OF MARK W. VOIGT**

                                       */Mark W. Voigt/*

Validation of Signature Code #MWV6003

_____

By:     **MARK W. VOIGT, ESQUIRE**
        Plymouth Meeting Executive Campus
        Suite 400
        600 West Germantown Pike
        Plymouth Meeting, PA 19462
        (610) 940-1709
        (Attorney for Plaintiff)

22