IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STACEY SNYDER** | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 07-1660 |
| | : | |
| **MILLERSVILLE UNIVERSITY, et al.** | : | |
| **Defendants** | : | |

# ORDER

AND NOW, this 30th day of January, 2008, upon consideration of Plaintiff's Second Amended Complaint (Doc. No. 17), Defendant's Motion to Dismiss (Doc. No. 19), and Plaintiff's Response (Doc. No. 20), it is hereby ORDERED that Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**, as follows:

1. Plaintiff, a former student at Millersville University, brings three claims under 42 U.S.C. § 1983 against three MU employees -- Defendants Dr. Jane S. Bray, J. Barry Girvin, and Dr. Vilas A. Prabhu -- in their official and individual capacities. Defendant Bray is the Dean of MU's School of Education. Defendant Girvin is a supervisor in MU's student-teaching internship program. Defendant Prabhu is the Provost and Vice President for Academic Affairs at MU.

2. Plaintiff alleges that Bray, Girvin, and Prabhu are policy makers at MU, and that they violated her First Amendment rights because their acts and omissions constituted a practice of deliberate indifference to Plaintiff's free speech rights. Plaintiff seeks

1

compensatory damages from each Defendant in his or her individual capacity.

3. Plaintiff also alleges that Bray, Girvin, and Prabhu violated her First Amendment rights when they denied her a Bachelor of Science in Education degree and when they refused to issue documentation necessary for her to obtain her teaching certificate. Plaintiff seeks mandatory injunctive relief against Defendants in their official capacities, demanding that they issue her BSE and take all steps necessary to ensure that she obtains her teaching certificate.

4. Plaintiff also alleges that Bray, Girvin, and Prabhu violated her Fifth and Fourteenth Amendment procedural due process rights when they took the actions against her that I have described. Plaintiff seeks compensatory damages from each Defendant in his or her individual capacity.

5. Finally, Plaintiff brings the following state law causes of action against Bray, Girvin, and Prabhu: violation of § 2006 of the Public School Code of 1949 and Title 53 of the Pennsylvania Code, Intentional Infliction of Emotional Distress, and Breach of Contract.

6. Defendants have moved to dismiss all counts of Plaintiff's Second Amended Complaint. Fed. R. Civ. P. 12(b)(6).

7. In deciding a Rule 12(b)(6) motion to dismiss, I must accept as true the factual allegations in the complaint. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). "The inquiry is not whether plaintiffs will ultimately prevail on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller

Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). The plaintiff must allege facts sufficiently detailed to "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65, 1974 (2007); see also Charles v. Lawyers Title Ins. Corp., 2007 WL 1959253 (D.N.J. July 3, 2007) (applying Twombly standard to Rule 12(c) motion); Hogue v. Palisades Collection, LLC, 2007 WL 1892938, at *2 (S.D. Iowa July 3, 2007) (Twombly standard applies to all cases, not just antitrust actions); Osakwe v. Dept. of Homeland Sec., 2007 WL 1886249, at *3 n.2 (S.D. Tex. June 29, 2007). In reciting the facts below, I have accepted Plaintiff's factual allegations as true.

8. From June 2002 until May 2006, Plaintiff attended MU, where she pursued a BSE degree. (Comp., Doc. No. 16, ¶ 9). As a prerequisite to receiving her BSE, Plaintiff was a student teacher at Conestoga Valley High School during the Spring of 2006. On May 8, 2006, Plaintiff's supervisor at CV called her at home and informed her that an issue had arisen concerning Plaintiff's professionalism. Plaintiff was asked not to return to CV for several days. On May 11, 2006, Plaintiff met with Girvin and with her supervisors at CV, who showed her a photograph and text that they had downloaded from her MySpace webpage. The photo showed Plaintiff wearing a hat and holding a plastic cup. The caption beneath the photo read "drunken pirate." The text accompanying this picture referred to Plaintiff's decision not to apply for a full-time teaching position at CV. (Comp., Doc. No. 16, ¶ 31). Girvin and Plaintiff's CV supervisors met with her and told her they considered Plaintiff's

posting "unprofessional." Girvin and Bray subsequently prepared a student-teacher evaluation in which they rated Plaintiff's professionalism "unsatisfactory." (Comp., Doc. No. 16, ¶¶ 26-32). On May 12, 2006, Bray informed Plaintiff that as a result of her unsatisfactory rating at CV, she was no longer eligible for a BSE degree or teaching certification and would instead graduate with a Bachelor of Arts degree in English. (Comp., Doc. No. 16, ¶¶ 36-39). On February 21, 2007, at Plaintiff's request, Prabhu held an "academic appeal" hearing for Plaintiff. In a letter dated March 26, 2007, Prabhu denied the appeal, citing Plaintiff's "overall poor performance during student teaching" as the cause for her ineligibility to receive teaching certification in Pennsylvania. Prabhu also determined that "Dr. Bray fairly resolved this academic issue by allowing [Plaintiff] to graduate on time with a Bachelor of Arts in English." (Comp., Doc. No. 16, ¶¶ 65-68).

9. On April 25, 2007, Plaintiff filed a Complaint against MU, Bray, Girvin, and Prabhu alleging, inter alia, three claims under 42 U.S.C. § 1983. On September 17, 2007, I dismissed Plaintiff's claims against Millersville University with prejudice because actions against the state are barred by the Eleventh Amendment. (Doc. No 15). I also gave Plaintiff leave to amend her ambiguous claims against the named Defendants in their individual capacities. Melo v. Hafer, 912 F. 2d 628, 635 (3d Cir. 1990); aff'd 502 U.S. 21 (1991) (state officials may be sued in their individual capacities when the plaintiff seeks recovery from the officials' personal assets). Finally, I gave Plaintiff thirty days to amend her request for relief against Bray, Girvin, and Prabhu in their official capacities. Will v.

Michigan Dept. of State Police, 491 U.S. 58, at 71 n. 10 (1989); Melo, 912 F. 2d at 635 (a state official may be sued under § 1983 in his or her official capacity when the plaintiff seeks only injunctive relief).

10. On October 12, 2007, Plaintiff filed her Second Amended Complaint. Defendants moved to dismiss five days later.

11. Plaintiff's free speech claim triggers different tests, depending on whether she was a public employee or a student. See Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (public employees seeking First Amendment relief must show that an activity constituted protected speech on a matter of public concern); Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 511-513 (1969) (school officials bear the burden of showing a constitutionally valid reason for regulating student speech); Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 766-767 (9th Cir. 2006) (First Amendment protects all student speech unless school officials demonstrate a risk that it would cause substantial disruption); see also Morse v. Frederick, 127 S.Ct. 2618, 2622 (2007) (free speech rights not violated where principal confiscated a student banner promoting drug use that was shown during school hours at a school sponsored event).

12. Defendants contend that Plaintiff's status as a student teacher made her a public employee, and that her First Amendment claim fails because her speech was purely personal and did not relate to a matter of public concern. Defendants also argue that even if Plaintiff can establish a free speech violation, her claim for damages against Bray,

Girvin, and Prabhu in their individual capacities is barred by qualified immunity. Plaintiff counters that she was a student, and that Defendants violated her First Amendment rights when they acted beyond the scope of their authority and punished her for a private, off-campus activity.

13. At this early stage of the litigation, I cannot determine whether Plaintiff was a student or a public employee. Accordingly, I do not know which First Amendment test to apply. Similarly, without deciding Plaintiff's status, I cannot determine whether her claims against Bray, Girvin, and Prabhu are barred by qualified immunity. See Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996). Should Defendants wish, they may at summary judgment again challenge the legal adequacy of Plaintiff's First Amendment claim and again raise qualified immunity. Accordingly, I **DENY without prejudice** the Motion to Dismiss Plaintiff's First Amendment claim against Bray, Girvin, and Prabhu in their individual capacities.

14. Plaintiff next claims that Bray, Girvin, and Prabhu, acting in their official capacities, violated her First Amendment free speech rights by denying her a BSE and by refusing to issue the documents she needed to obtain her teaching certificate. Plaintiff seeks a mandatory injunction, requiring the issuance of her BSE and her teaching certificate. Under § 1983, a Plaintiff raising a First Amendment claim may seek related injunctive relief against state actors in their official capacities. See Melo, 912 F.2d at 630; see also Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985) (plaintiff entitled to reinstatement if he

establishes wrongful termination). Because Plaintiff's demand for injunctive relief turns on the merits of her First Amendment claims, however, I must defer ruling on Defendants' challenge to that demand. Accordingly, I **DENY without prejudice** Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief.

15. Plaintiff alleges that Defendants violated the Fifth and Fourteenth Amendments because they did not provide her with due process before denying her BSE and teaching certification. Plaintiff does not distinguish between her Fifth and Fourteenth Amendment procedural due process claims. The Fifth Amendment restraint on national government action applies to state government action through the Fourteenth Amendment. Ripon Soc., Inc. v. Nat'l Republican Party, 525 F.2d 567, 574 (D.C. Cir. 1975); Popow v. City of Margate, 476 F.Supp. 1237, 1242 (D.N.J. 1979). Defendants are all employees at a state institution. Accordingly, I will address Plaintiff's due process claim under the Fourteenth Amendment.

16. To determine whether Plaintiff has asserted a valid procedural due process claim, I first consider whether Plaintiff's asserted interest merits constitutional protection under the Fourteenth Amendment. If so, I then determine what process is required to protect that interest. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

17. Plaintiff's claimed property interest in obtaining her BSE and her teaching certificate is dubious. See Hennessy v. City of Melrose, 194 F.3d 237, 249-250 (1st Cir. 1999) (whether a student at a state university has a constitutionally protected property interest in

7

continued enrollment is unclear). For purposes of deciding the Motion to Dismiss, however, I will assume that Plaintiff has such a property interest. See, e.g., id. at 250 (assuming "in an abundance of caution" that completing a teaching certification program constitutes a constitutionally protected property interest).

18. Plaintiff's due process claim also triggers different tests, depending on whether Defendants' actions were academic or disciplinary. Mauriello v. University of Medicine and Dentistry of New Jersey, 781 F.2d 46, 50 (3d Cir. 1986) (academic actions require only an "informal-give-and-take" between the student and the administrative body dismissing her); Goss v. Lopez, 419 U.S. 565 (1975) (disciplinary actions require that school officials provide the student with oral or written notice of charge against her, an explanation of their evidence, and an opportunity for the student to present her side of the story). Defendants argue that even if Plaintiff has a valid property interest, her claim still fails because their actions were academic, and she was afforded adequate due process. Plaintiff contends Defendants' actions were disciplinary and that the due process they afforded her was inadequate.

19. A denial of a degree based on a student's failure to fulfill course requirements is academic. Compare Bd. of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 86 (1978) (record left no doubt that medical student's dismissal for failure to fulfill clinical requirements was academic), Mauriello, 781 F.2d at 50 (dismissal for poor research and lack of dedication to academic pursuits was academic), and Hennessy, 194

F.3d at 250 (dismissal for failing a student teacher practicum "fell well within the sphere of constitutionally permissible academic decision making") with Goss, 419 U.S. at 569 (suspension for disobedient conduct committed at school was disciplinary in nature) and Everett v. Marcase, 426 F.Supp. 397, 399 (E.D. Pa. 1977) (transfer from one public school to another for disciplinary reasons constituted disciplinary action).

20. As alleged by Plaintiff, Defendants failed Plaintiff in her student teaching course, refused to provide her with a teaching certification, and granted her a BA rather than a BSE because she did not meet the BSE requirements. These actions were all academic in nature. Plaintiff argues that Defendants' actions were disciplinary because, in their final evaluation of her work, Defendants faulted her "professionalism," not her academic skills. Plaintiff ignores, however, that as pled, her "unsatisfactory" rating plainly constituted an academic assessment or grade of her performance in a student teaching course. Moreover, the assessment had academic impact: she was awarded a BA degree because she had not satisfied the requirements for a BSE; she was not given a teaching certificate because she had not met the prerequisites.

21. Plaintiff argues that even if Defendants' actions were academic, they nevertheless violated her due process rights because they failed to inform her of her academic deficiencies before granting her a BA, did not allow her an opportunity to rectify those deficiencies during a probationary period, and denied her the opportunity to present her case before an impartial arbiter.

22. Academic actions are permissible without formal hearings and probationary periods. Horowitz, 435 U.S. at 86. Rather, an "informal-give-and-take" between the student and the administrative body is adequate. See, e.g., Mauriello, 781 F.2d at 50 (academic dismissal of Ph.D. student required only an informal faculty evaluation); Hankins v. Temple Univ., 829 F.2d 437 (3d Cir. 1987) (no due process violation where medical student had opportunities to discuss her performance and received two written evaluations prior to her dismissal on academic grounds). A student bears a heavy burden in seeking to persuade a court to set aside a faculty judgment of unsatisfactory academic performance; courts may not override a faculty's judgment unless it represents a substantial departure from accepted norms. Mauriello, 781 F.2d at 50 (courts are "ill-equipped to review the largely subjective academic appraisals of the faculty.").

23. As alleged by Plaintiff, before Defendants took any action, she met with Girvin and her student teaching supervisors at CV, and with Bray at MU. (Comp., Doc. No. 16, ¶¶ 30-37). Plaintiff was also given several written evaluations that identified her lack of professionalism in student teaching as causing the denial of her BSE. (Comp., Doc. No. 16, ¶¶ 28; 34). Upon Plaintiff's request, Prabhu held a hearing when she appealed that denial. (Comp., Doc. No. 16, ¶¶ 26-32). 57-58; 65). Finally, Prabhu provided a written explanation of his decision to deny Plaintiff's appeal. (Comp., Doc. No. 16, ¶ 68). These facts confirm that Defendants acted within accepted norms for academic actions. Accordingly, I **dismiss with prejudice** Plaintiff's procedural due process claim against

Defendants in their individual capacities.

24. Plaintiff has also brought claims for violation of the Public School Code, the Pennsylvania Code, intentional infliction of emotional distress, and breach of contract. These are state law claims over which I may exercise pendent jurisdiction if they are so related to Plaintiff's § 1983 claims that they form part of the same case or controversy. See 28 U.S.C. § 1367(a); Lucas v. Twp. of Bethel, 319 F.3d 595, 600 (3d Cir. 2003).

25. Pursuant to the Pennsylvania Constitution, Article I, Section 11, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310; McGrath v. Johnson, 67 F.Supp.2d 499, 511-512 (E.D. Pa. 1999) (barring claims against Department of Corrections employees sued in their individual capacities where they had acted within the scope of their duties). Plaintiff has pled that Bray, Girvin, and Prabhu are all employees of the Commonwealth of Pennsylvania. The facts as pled establish that Defendants acted within the scope of their duties when they evaluated Plaintiff, gave her a BA instead of a BSE, declined to provide her with a teaching certification, and afforded her an academic appeal of their actions. Moreover, none of Plaintiff's claims fall within the exceptions provided by the General Assembly. 42 Pa. C.S.A § 8522 (excepting acts that involve: vehicle liability; medical professional liability; care of personal property; Commonwealth real estate; potholes and dangerous conditions; care of animals; liquor

store sales; National Guard activities; and toxoids and vaccines). In the circumstances alleged by Plaintiff, sovereign immunity bars her state law claims. 1 Pa. C.S.A. § 2310; McGrath, 67 F.Supp.2d at 511-512.

26. In the alternative, I conclude that on the merits, none of Plaintiff's state law claims is legally viable. For example, Plaintiff has provided no case law, nor have I found any, establishing that public universities are contractually obligated to grant particular types of degrees (in Plaintiff's case, a BSE) to their enrolled students.

27. Plaintiff's claim for intentional infliction of emotional distress also fails as a matter of law. To make out that tort, Plaintiff must allege that Defendants' conduct was (1) extreme and outrageous, (2) intentional or reckless, and (3) caused severe emotional distress. Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307, 309-310 (M.D. Pa. 1988) (citing Restatement (Second) of Torts § 46(1) (1965)).

28. As a preliminary matter, it is for the court to determine if the defendant's conduct is so clearly extreme or outrageous as to permit recovery. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (Pennsylvania courts allow recovery "only in limited circumstances"). Extreme and outrageous conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." Restatement (Second) of Torts § 46(1) (1965). Accepting all Plaintiff's factual allegations as true, it is apparent that Defendants' actions were neither extreme nor outrageous. Compare Bowersox, 677 F.Supp. at 311 (employee's allegations that her superior retaliated against

her after she rejected his sexual advances constituted an intentional infliction of emotional distress cause of action under Pennsylvania law) and Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir.1979) (intentional infliction of emotional distress claim sufficiently supported where the defendant's team physician knowingly lied that plaintiff was suffering from a fatal disease) with Cox, 861 F.2d at 395-396 (3d Cir. 1988) (employee firing could have been handled with more empathy and finesse, but was not so outrageous as to allow relief for intentional infliction of emotional distress claim) and Rinehimer v. Luzerne County Cmty. Coll., 372 Pa. Super. 480, 495, 539 A.2d 1298, 1305 (Pa. Super. 1988) (employer firing the plaintiff because employer was displeased with the plaintiff's work performance was not outrageous conduct). Accordingly, I conclude that Plaintiff has not adequately pled intentional infliction of emotional distress.

29. Finally, Plaintiff seeks reinstatement pursuant to § 2006 of the Pennsylvania Public School Code of 1949, which requires all state universities to "establish policies and procedures for the admission discipline and expulsion of students," and Title 53 of the Pennsylvania Code (although she does not identify any specific provision in that Title). (Doc. No. 16, Comp. ¶ 96).

30. As Plaintiff concedes in her Memorandum, (Doc. No. 20, at 35), the Pennsylvania Public School Code includes neither express nor implied private rights of action. See Coreia v. Schuylkill County Area Vocational-Tech. Sch. Auth., No. 4:CV-04-2425, 2006 WL 1310879 (M.D. Pa. 2006) (noncompliance with the Pennsylvania School Code does not

13

trigger a private cause of action); Whipple ex rel. Whipple v. Warren County Sch. Dist., 133 F.Supp.2d 381, 383 (W.D. Pa. 2000) (no cause of action necessary under the regulations of the Pennsylvania Code where plaintiff had other remedies available to address alleged regulations breach). That Plaintiff seeks only injunctive relief under the Public School Code does not provide her with a private right of action that does not otherwise exist.

31. Plaintiff does not elaborate on her allegations under Title 53 of the Pennsylvania Code. She does, however, make passing references to Title 22 of the Pennsylvania Code, mentioning sections 505.2, 505.3, and 505.9. Each of these provisions pertains to disciplinary matters. As I have ruled, Defendant's actions were academic, not disciplinary. Accordingly, even if violation of this Code included a private right of action (which it apparently does not), Plaintiff's claim fails.

32. It is thus evident that Plaintiff's state law claims are not legally viable. Accordingly, I **dismiss them with prejudice**.

33. In conclusion, I **GRANT** Defendants' motion, and **dismiss with prejudice** Plaintiff's due process claim and all Plaintiff's state law claims. I **DENY without prejudice** the motion to dismiss Plaintiff's First Amendment claim and request for injunctive relief against Defendants Bray, Girvin, and Prabhu. _____

                                           **AND IT IS SO ORDERED.**
                                           /s Paul S. Diamond

                                           _____
                                           **Paul S. Diamond, J.**_____