IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY SNYDER, | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 07-1660 |
| | : | |
| MILLERSVILLE UNIVERSITY, J. BARRY GIRVIN, DR. JANE S. BRAY and DR. VILAS A. PRABHU, in their individual and official capacities, | : | JURY TRIAL DEMANDED |
| | : | |
|     and | : | |
| | : | |
| DR. JUDITH WENRICH<br>One South George Street,<br>P.O. Box 1002,<br>Millersville, PA 17551-0302,<br>(in her individual and official capacity) | : | |
| | : | |
|     and | : | |
| | : | |
| DR. BEVERLY SCHNELLER<br>One South George Street,<br>P.O. Box 1002,<br>Millersville, PA 17551-0302,<br>(in her individual and official capacity),<br>    Defendants | : | |

## THIRD AMENDED COMPLAINT

Plaintiff, Stacy Snyder, by and through her undersigned counsel, hereby alleges as follows:

## PARTIES

1. Plaintiff is an adult individual residing at the above-captioned address. At all times material hereto, Plaintiff was a student at Defendant, Millersville University (hereinafter "MU").

2. MU is a public university within the meaning of 24 U.S.C. §1-101, *et seq.*, with

1

administrative offices at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. At all times relevant hereto, MU was a recipient of federal financial assistance.

3. Defendant, Dr. Jane S. Bray ("Bray"), is an adult individual and Dean of MU's School of Education with a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. She is being sued in her individual and official capacities.

4. Defendant, J. Barry Girvin ("Girvin"), is an adult individual and supervisor in MU's student-teaching internship program. He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. Girvin is being sued in his individual and official capacities.

5. Defendant, Dr. Vilas A. Prabhu ("Prabhu"), is an adult individual and MU's Provost. He maintains a business address at One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. Prabhu is being sued in his individual and official capacities.

6. Defendant, Dr. Judith Wenrich ("Wenrich"), is an adult individual and Director of MU's Field Services Department and Department of Early Childhood Education. Her business address is One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. She is being sued in her individual and official capacities.

7. Defendant, Dr. Beverly Schneller ("Schneller"), is an adult individual and Chairperson of MU's English Department. Her business address is One South George Street, P.O. Box 1002, Millersville, PA 17551-0302. She is being sued in her individual and official capacities.

8. With respect to all facts and violations alleged in this complaint, all defendants at all times acted under color of state law.

## JURISDICTION AND VENUE

9. This Honorable Court has jurisdiction over this action pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution as well as 22 U.S.C. §§ 1331 and 1343, 42 U.S.C. Section 1983 and common law. Supplemental jurisdiction over the pendent state law claims is proper pursuant to 28 U.S.C. §1367(a) and common law.

10. Venue is appropriate in this Honorable Court since the claims set forth herein arose in this Judicial District, and both Plaintiff and Defendants herein.

**ALLEGATIONS OF FACT**

11. Plaintiff attended MU from June, 2002 until May, 2006. After majoring in Biology and English, Plaintiff switched her major to Secondary English Education in MU's School of Education. (Exhibit "A" hereto.) Plaintiff's grade point average was between 3.0 and 3.49, exceeding MU's requirement for graduation with an initial teaching certificate in Pennsylvania. (Exhibit "B,", p. 10.)

12. As a prerequisite to receiving her Bachelor of Science in Education ("BSE"), Plaintiff successfully completed several "field experiences." *Id*. Her first such assignment was at the La Academia Charter School in the spring of 2005. There, Plaintiff achieved the highest marks in all areas, including "professional competencies." (Exhibit "C," p. 1.)

13. Next, during the fall semester, 2005, Plaintiff completed a field experience teaching grades 10 and 11 at Lampeter-Strasburg High School. On her final evaluation, Plaintiff achieved grades of "outstanding" and "competent" in all areas. (Exhibit "D.")

14. Also during the fall of 2005, Plaintiff completed a field experience in teaching and writing at Garden Spot High School. There, her supervising teacher, Neil Weidman, lauded Plaintiff as "exceptionally professional" and predicted she "will become an excellent teacher." (Exhibit "E".)

3

15. In a letter dated February 2, 2006, John N. Short, Acting Dean at MU, congratulated Plaintiff as "one of [MU's] finest student scholars." (Exhibit "F.")

16. In or about March, 2006, Plaintiff was named to MU's Dean's List. (Exhibit "G.")

17. During the spring, 2006 semester, Plaintiff was a student teacher at Conestoga Valley High School ("CV"). There, she taught ninth and twelfth grade English. At CV, Nicole Reinking was Plaintiff's teacher-advisor, and Deann Buffington was her supervisor. Her internship supervisor at MU was Girvin.

18. Girvin (in his individual capacity) observed Plaintiff in the classroom on March 9, 2006. He noted Plaintiff "prepare an excellent handout" and was "confident about her content and her approach." (Exhibit "H".)

19. On or about March 17, 2006, Girvin (in his individual capacity) prepared a "mid-evaluation - English" on Plaintiff. (Exhibit "I" hereto.) Therein, he awarded Plaintiff a "G," the highest mark, for her adherence to the Pennsylvania Professional Code of Ethics. (*Id.*, p. 1.) Girvin also noted several areas in which Plaintiff needed "significant remediation," including portions of her preparation, teaching performance and approach to student learning. (*Id.*) Importantly, none of the areas identified related to Plaintiff's "professionalism." *Id*.

20. On or about March 20, 2006, Reinking prepared her own "mid-evaluation - English" on Plaintiff, using the same format. (Exhibit "J.") Reinking gave Plaintiff grades of "G" and "R," the two highest marks, in professionalism. (*Id.*, p. 1.) She described Plaintiff as "a very organized, punctual student teacher" who "has also shown a commitment to ongoing professional development . . . ." (*Id.*) Reinking also noted several areas in which Plaintiff needed "significant remediation," including portions of preparation, teaching performance, effect on student learning and English-

4

specific items. Again, none of the areas related to Plaintiff's "professionalism." *(Id.)*

21. On or about March 21, 2006, Girvin (in his individual capacity) evaluated Plaintiff according to the Pennsylvania Department of Education's ("PDE") "Statewide Evaluation Form for Student Professional Knowledge and Practice ("PDE-430.)" (Exhibit "K;" hereinafter "PDE-430") He awarded Plaintiff a "superior" rating in professionalism, noting she "usually and extensively conducts herself in a very professional manner." *(Id.*, p. 4.)

22. Girvin also graded Plaintiff "satisfactory" in "planning and preparation" and "instructional delivery." He rated Plaintiff "unsatisfactory" in "classroom environment." *(Id.*, p. 2.) Girvin's overall rating of her performance was "satisfactory." *(Id.*, p. 5.)

23. After her mid-evaluation, Plaintiff's teaching performance improved dramatically. In a note following his observation of Plaintiff on April 3, 2006, Girvin (in his individual capacity) observed:

> "Ms. Snyder started a new unit (Macbeth) with a new class. She has done extensive planning using the [MU] (CIRQL) process. The unit plan was well done and this class got the delivery off to a good start. The lesson plan was excellent." (Exhibit "L.")

24. Similarly, following a "block" classroom visit on April 6, 2006, Girvin (in his individual capacity) noted:

> "The good-feeling tone continued with the class. Ms. Snyder's approach was very business-like and highly organized. Her lesson plan and supplementary material were excellent." (Exhibit "M".)

25. After inspecting Plaintiff's second "block" class on April 6, 2006, Girvin (in his individual capacity) recounted:

> "There was good use of time limits, transitions, and supplementary materials. Ms. Snyder asked quality stimulus questions. She gave

> students enough time to work but kept them busy and on task. . . .
> There were some quality student questions which she handled well.
> As in block one, she did a good job with purpose." (Exhibit "N".)

26. Girvin (in his individual capacity) also noted his impressions of Plaintiff's teaching on April 18, 2006. He made ten "glowing" comments, including "great improvement in content" and "excellent CIRQL unit planning." (Exhibit "O.")

27. On or about May 2, 2006, Girvin (in his individual capacity) prepared a summary of his evaluation of the important CIRQL unit project Plaintiff completed during her student teaching assignment. (Exhibit "P.") Girvin rated Plaintiff "exemplary" in all areas. The evaluation form defines "exemplary" as, *inter alia*:

> "Addresses all questions with constructive in-depth analysis, multiple good ideas that are used in unit plan. . . . Creative, thoroughly-planned, good variety strategies to promote student inquiry and critical thinking, highly motivational. . . . Constructive, insightful reflection on teaching clearly connected to evidence of student learning and feedback from others." (*Id.*)

28. On or about May 4, 2006, a CV representative downloaded (without Plaintiff's permission) a photograph and text from Plaintiff's private web page at www.myspace.com. A similar photo is attached to the Complaint as Exhibit "R." The undated picture shows Plaintiff (then age 25) at a costume party outside of school hours wearing a party hat and holding a plastic cup. The photograph does not show the cup's contents. Plaintiff believes the caption read "drunken pirate."

29. The text accompanying the photo contained Plaintiff's personal thoughts and opinions. Among other topics, Plaintiff mentioned that an unnamed person might be responsible for her decision not to apply for a full-time teaching position at CV. The CV representative distributed the photo and text to several other CV officials, including Buffington and acting superintendent Kim

Seldomridge. Upon viewing the photo and text, Buffington immediately directed Reinking to draft a list of Plaintiff's other allegedly "unprofessional behavior" at CV.

30. On May 8, 2006, Buffington telephoned Girvin to express her outrage over the "drunken pirate" photo and text." She told Girvin that Seldomridge was involved in the matter and was very upset. Girvin (in his individual capacity) professed his horror over the "drunken pirate" incident and vowed swift action against Plaintiff. He then informed Bray and Wenrich of the incident.

31. Buffington next telephoned Plaintiff at home. She advised Plaintiff that an "issue" had just arisen concerning her "professionalism" as a teacher. Buffington refused to give Plaintiff any further information. She then forbade Plaintiff from returning to CV until Thursday, May 11, 2006. Plaintiff immediately telephoned Girvin, who (in his individual capacity) refused to disclose any more information.

32. Plaintiff next spoke with Girvin (in his individual capacity) on May 9, 2006. Girvin explained only that someone delivered a picture of Plaintiff and some text to Buffington. He refused to give Plaintiff any details. Girvin told Plaintiff MU may expel her and deny her the BSE and teaching certificate she earned due to the incident.

33. On or about May 10, 2006, Wenrich (in her individual capacity) interviewed Buffington and Girvin about "drunken pirate" incident. Buffington explained that the incident was the "straw that broke the camel's back" regarding Plaintiff's unfitness to teach. She demanded MU deny Plaintiff her BSE and teaching certificate forthwith.

34. At mid-day on May 10, 2006, Plaintiff spoke to Girvin (in his individual capacity) about her final evaluation the following day. Girvin told Plaintiff to report directly to CV's

7

administrative offices at the time of her evaluation. He ordered Plaintiff not to speak to any CV students at any time.

35. On May 10, 2006, Plaintiff forwarded an apology letter to various staff members at CV and MU. Upon reading Plaintiff's letter, Buffington gave a note to Girvin, Wenrich and Bray, again expressing her fury over the "drunken pirate" incident. She emphasized that, if Defendants did not deny Plaintiff her BSE and teaching degree, CV may not permit future MU student teachers to perform their internships there.

36. After reading Buffington's note, Girvin (in his individual capacity) immediately prepared Plaintiff's "final evaluation - English." (Exhibit "Q.") In it, Girvin awarded Plaintiff "superior" or "competent" ratings in all areas except "professionalism." Girvin deemed Plaintiff's professionalism "unsatisfactory," explaining only:

> "There were errors in judgment that relate to §4(b), 7-8; and §5 of Pennsylvania's Code of Professional Practice and Conduct for Educators." *Id.*

37. In his "final evaluation - English," Girvin neither cited specific examples of Plaintiff's "errors in judgment" nor explained how they violated the above Code.

38. On May 11, 2006, Plaintiff met with Girvin (in his individual capacity), Reinking and Buffington to review her final evaluation. The three showed Plaintiff a copy of the "drunken pirate" photo and text similar to Exhibit "R." No one at the meeting provided Plaintiff with a copy of the photo and text.

39. Buffington, Reinking and Girvin advised Plaintiff that posting the photo, caption and text on her web page was "unprofessional." The three cited no laws, rules, regulations or policies either at MU or CV to support this opinion. They claimed that, if CV students accessed Plaintiff's

8

private web page, they might have found the information offensive. The trio cited no examples of students who actually saw the information.

40. Reinking, Buffington and Girvin then gave Plaintiff Reinking's list of Plaintiff's other allegedly "unprofessional behavior." They accused Plaintiff of incompetence and claimed she should have been removed from her student-teaching position months ago. Before the "drunken pirate" incident, no one at either MU or CV ever made such allegations to Plaintiff. Girvin warned Plaintiff that she would meet with Wenrich the following day to discuss whether Defendants would expel her from MU.

41. On or about May 12, 2006, Girvin (in his individual capacity), after consultation with Bray and Wenrich (in their individual capacities), prepared a new PDE-430 on Plaintiff. (Exhibit "S.") In it, they awarded Plaintiff "superior" marks in "planning and preparation," as well as "satisfactory" grades in "classroom environment" and "instructional delivery."

42. Listing no specific transgressions and specifying no "federal laws" broken, Girvin, Wenrich and Bray lowered Plaintiff's mid-year rating in "professionalism" from "superior" to "unsatisfactory," noting simply:

> "Performance indicators not demonstrated:
>
> Integrity and ethical behavior, professional conduct as stated in Pennsylvania Code of Professional Practice and Conduct for Educators; and local, state and federal, laws and regulations."
> (Exhibit "S," p. 4.)

43. On or about May 12, 2006, Bray, Girvin, Wenrich and Schneller (in their official capacities) met to discuss Plaintiff's possible expulsion. Schneller convinced the other three that they had to give Plaintiff some degree to avoid scrutiny from others at MU. Accordingly, the four issued

9

a document entitled "Request for Exception to Graduation Requirements." (Exhibit "T.") This form bears the note, "student removed from student teaching - changed degree to BA." *(Id.)* 44.

At the time, Plaintiff lacked sufficient course credits in the English Department to graduate with a BA in English. Without any policy authority, Schneller (in her individual capacity), in consultation with Wenrich, Girvin and Bray, changed enough of Plaintiff's general education credits to English Department credits so MU's administration would permit Plaintiff's graduation.

45. On May 12, 2006, Plaintiff reported to Wenrich's office at CV. She waited in the hallway while Wenrich met with Girvin. Wenrich and Girvin (in their individual capacities) then ushered Plaintiff into Wenrich's office. The two accused Plaintiff of promoting underage drinking through her "drunken pirate" photo. Without notice or hearing, the two informed Plaintiff that they would not give her the BSE degree and teaching certificate she earned.

46. Wenrich informed Plaintiff that Defendants would never let her take any more education courses at MU. She then told Plaintiff that Defendants would "allow" her to graduate only with a Bachelor of Arts ("BA") degree. Throughout her nearly four years at MU, Plaintiff had pursued a BSE degree, not a BA.

47. Plaintiff then reported to Schneller's office. Schneller made the tearful Plaintiff sign the necessary forms so she could graduate with a BA.

48. On or about May 13, 2006, Plaintiff attended MU's graduation ceremony and received her BA degree. Since then, Plaintiff has been unable to obtain from PDE the teaching certification she earned at MU during her four years of study there. Since her graduation, MU has refused to give Plaintiff an official copy of her college transcript.

49. Plaintiff appealed the denial of her BSE and teaching certificate. In it, she responded

to each of the allegedly unprofessional acts on Reinking's list.

50. Bray and Wenrich met with Plaintiff on May 15, 2006 to discuss her appeal. Bray joked that Plaintiff had made it the closest to graduation of any MU student teacher before being denied her BSE and teaching certificate. Bray and Wenrich then accused Plaintiff of promoting underage drinking through the "drunken pirate photo and text. They told Plaintiff to be happy she was graduating with any degree at all. By letter dated the same day, Bray denied Plaintiff's appeal.

51. Apart from Bray's and Girvin's refusal to certify that she satisfactorily completed her student teaching, Plaintiff meets all the requirements for an initial teaching certificate in Pennsylvania. (Exhibit "B," p. 10.)

52. According to PDE guidelines, in completing the PDE-430, the preparer must justify his or her evaluation as follows:

> "This is a key section as it provides the student teacher with a clear understanding of the evaluator's decision based on observations and other **specific sources of evidence**. This section also provides **further explanation** of why the student teacher is receiving a particular rating for the category. The evaluator's comments help to focus the student teacher on his/her specific strengths and areas for improvement. It is important to write statements that are clear, consistent, and specify key areas for improvement, if required." (Exhibit "U," p. 2 - emphasis added.)

53. On Plaintiff's final PDE-430, Bray, Wenrich and Girvin (in their individual capacities) list no "specific sources of evidence" to justify Plaintiff's "unsatisfactory" grade in "professionalism."

54. Likewise, Bray, Wenrich and Girvin (in their individual capacities) fail to supply "further explanation" on its final PDE-430 sufficient to justify Plaintiff's "particular rating" of unsatisfactory in "professionalism."

55. Nothing in Pennsylvania's Code of Professional Practice and Conduct for Educators

prohibits prospective teachers from posting personal photographs and text on their private web page. (Exhibit "V.")

57. At the time of the "drunken pirate" incident, MU had no policy, practice or procedure prohibiting students from posting either photos of themselves or personal text messages on their private web pages.

57. MU's Student Code of Conduct ("Student Code") governs the rights and responsibilities of all students attending school there, including Plaintiff, during all times in question. (See Exhibit "W.") Nothing in the Student Code in any way prohibits Plaintiff from posting photographs on her private web site. *Id.*

58. The Student Code defines "disciplinary sanctions" as including expulsion, suspension and "educational sanction." (Exhibit "W," p. 4.) Each of the following actions by Bray and Girvin, in their individual and official capacity, constitutes a "disciplinary sanction" against Plaintiff under the Student Code:

    A.    Removal of Plaintiff from its School of Education;

    B.    Refusal to allow Plaintiff to graduate with the BSE degree she earned at MU;

    C.    Manipulation of Plaintiff's official MU records so she only graduated with a BA degree; and

    D.    Refusal to certify that Plaintiff meets the requirements for an initial teaching certificate in Pennsylvania.

59. According to the Student Code, students are subject to "disciplinary sanction" when, either on or off campus, they allegedly violate MU's "regulations," including:

    A.    "Violation of federal, state or local law;"

B. "Allegations of academic dishonesty;"

C. Conduct threatening the welfare of others.

60. In its unsatisfactory evaluation of Plaintiff's "professionalism," Bray, Wenrich and Girvin, in their individual capacities, allege Plaintiff, in some unspecified way, violated "local, state and federal, laws and regulations." (Exhibit "Q," p. 4.)

61. In its final PDE-430 form, Bray, Wenrich and Girvin, in their individual capacities, allege Plaintiff engaged in undefined unprofessional, illegal and unethical behavior. (*Id.*)

62. According to the Student Code, any student subject to "disciplinary sanctions" is entitled to a hearing before either the "disciplinary board" or the "judicial board." (Exhibit "W," p. 3.) At this hearing, a student is entitled to a panoply of due process protections, including the right to question witnesses, examine and submit documents, the assistance of an "advisor," an impartial fact-finder and appeal rights. *Id.*

63. Bray, Girvin, Wenrich and Prabhu, in their individual capacities, never offered Plaintiff a disciplinary hearing under the Student Code to address the charges discussed herein.

64. By letter dated January 28, 2007, Plaintiff's counsel requested MU provide Plaintiff with an impartial due process hearing in accordance with her rights under the Constitution and the Student Code. (See Exhibit "X.") In response, Bray, Girvin, Wenrich and Prabhu, in their individual capacities, offered Plaintiff only an "academic appeal" before Prabhu. (Exhibit "Y.")

65. By letter dated February 16, 2007, Prahbu, in his individual capacity, (after consultation with Bray, Wenrich and Girvin [in their individual capacities]), advised Plaintiff that if she brings an attorney, he or she:

" . . . will not be permitted to directly participate in the proceeding by

13

asking questions, responding to questions, or making arguments. You are free to interact privately with Ms. Snyder as her advisor." (Exhibit "Z.")

66. Nothing in MU's "academic dismissal" policy authorized Prabhu, Bray and Girvin (in their individual capacities), to deny Plaintiff the effective assistance of counsel. (See Exhibit "AA.")

67. Nothing in MU's "academic dismissal" policy permitted Prabhu, Bray and Girvin (in their individual capacities) to expel Plaintiff from its School of Education for posting a photograph on a private web site.

68. MU's "academic dismissal" policy provides:

"A student will *not* be dismissed for academic reasons in any semester that he/she has

1. Been in good academic standing (i.e., not on probation), or

2. Earned a 2.00 or higher semester GPA." (Exhibit "AA," p. 3.)

69. MU's "academic dismissal" policy permits its officials to issue a warning letter to underperforming students prior to placing them on academic probation. (*Id.*)

70. Bray, Girvin, Wenrich and Prabhu, in their individual capacities, never sent Plaintiff a warning letter apprising her that, due to her alleged academic under-performance, MU may deny her an education degree.

71. At no time did Bray, Girvin, Wenrich and Prabhu, in their individual capacities, place Plaintiff on academic probation for any reason.

72. On February 21, 2007, Prabhu, Wenrich and Bray, in their individual capacities, in consultation with Girvin (in his individual capacity) conducted an "academic dismissal" hearing in this

14

matter. At the hearing, Prabhu, Wenrich and Bray refused to allow Plaintiff's counsel to question either his client or cross-examine any MU personnel. The three refused to allow counsel to speak at all, much less argue in opposition to their expulsion of Plaintiff.

73. Prabhu, Wenrich and Bray, in their individual capacities, refused to give Plaintiff a copy of the "drunken pirate" photograph and text or any other documents supporting Plaintiff's expulsion. During the hearing, neither Prabhu nor Bray mentioned any specific instances supporting their general claim that Plaintiff's student-teaching performance was substandard.

74. By letter dated March 26, 2007, Prabhu, in his individual capacity, acting in concert with Bray, Wenrich and Girvin, in their individual capacities, denied Plaintiff's appeal, observing:

> "Your overall poor performance during student teaching resulting in your ineligibility to receive teaching certification from the Commonwealth. Accordingly, it is my determination that Dr. Bray fairly resolved this academic issue by allowing you to graduate on time with a Bachelor of Arts Degree in English." (See Exhibit "BB.")

75. At no time did Prabhu, Bray, Wenrich or Girvin, in their individual capacities, offer Plaintiff the opportunity simply to repeat her student-teaching assignment in another school district.

76. During the hearing, Prabhu, Wenrich and Bray, in their individual capacities, presented no documentary evidence or witness testimony supporting the claimed misconduct cited by Prabhu on page two of his Decision. (*Id.*)

77. At all times material hereto, Prabhu, Bray, Wenrich, Schneller and Girvin, in their individual capacities, acted collectively to deprive Plaintiff of her Constitutional rights to freedom of speech and due process of law. The reasons proffered by said Defendants for their actions against Plaintiff were merely a pretext for their Constitutional violations.

78. Despite knowledge and adequate opportunity to learn of the misconduct of the

15

individual defendants and to remedy such misconduct, MU adopted, approved and ratified the acts, omissions and misconduct described herein.

79. The individual defendants, or those acting on their behalf, in their individual and official capacities, took all actions described herein, including the denial of Plaintiff's BSE and teaching certification, under color of state law. Said actions deprived Plaintiff of those rights secured for her by the Constitution and laws of the United States and the State of Pennsylvania, in particular the Free Speech and the Due Process Clauses of the First, Fifth and Fourteenth Amendments.

80. The individual defendants, in both their individual and official capacities, carried out the misconduct described herein in retaliation for Plaintiff's exercise of her civil rights as secured for her by the Free Speech and Due Process Clauses of the First, Fifth and Fourteenth Amendments.

81. The actions by Bray, Girvin, Wenrich, Schneller and Prabhu (in their individual capacities only) as described herein were intentional, malicious, willful, wanton and in gross and reckless disregard of Plaintiffs' rights under the Constitution as well as state and federal law.

### COUNT I - VIOLATION OF 42 U.S.C. SECTION 1983 - FIRST AMENDMENT - FREEDOM OF SPEECH
**(Plaintiff v. Bray, Girvin, Schneller, Wenrich and Prabhu in Their Individual Capacities)**

82. Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

83. Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or law of the United States. *Shuman, et al. v. Penn Manor Sch. Dist., et al.*, 422 F.3d 141, 146 (3rd Cir. 2005).

84. The First Amendment to the U.S. Constitution provides, in pertinent part: "Congress

shall make no law . . . abridging the freedom of speech, . . ..”

85. Defendants, Bray, Girvin, Schneller, Wenrich and Prabhu, in their individual capacities, violated Plaintiff's right to freedom of speech under the First Amendment by committing the wrongful acts described in the preceding paragraphs.

86. At all times material hereto, Bray, Girvin, Wenrich, Schneller and Prabhu were policy makers at MU.

87. The acts and omissions by Bray, Girvin, Schneller, Wenrich and Prabhu (in their individual capacities) constituted a custom, practice and policy of deliberate indifference to Plaintiff's Constitutional rights secured by the First Amendment.

88. Plaintiff's website posting as described in the preceding paragraphs did not cause any actual disruption of the school environment to justify limiting her off-campus speech.

89. Plaintiff's website posting did not present a "true threat" to any person, place or thing either at CV or MU.

90. Plaintiff's posting the photo and caption in question did not ". . . materially and substantially interfere with the requirements of appropriate discipline in the operation . . ."of either MU or CV. *Tinker v. Des Moines Indep. Community Sch. Dist*, 393 U.S. 503, 509, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969).

91. Plaintiff's speech was neither lewd nor obscene.

92. Even if Plaintiff's speech was lewd or obscene, no exceptional circumstances exist to justify punishing Plaintiff for her off-campus speech. *Killion v. Franklin Regional Sch. Dist.*, 136 F.Supp.2d. 446, 457 (W.D.Pa. 2001).

93. The "drunken pirate" photo and text constituted protected comment on a matter of public concern, to wit: the reasons for Plaintiff's decision not to apply for a permanent teaching position at MU.

### COUNT II - VIOLATION OF 42 U.S.C. SECTION 1983 - FIRST AMENDMENT - FREEDOM OF SPEECH
**(Plaintiff v. Bray, Girvin, Schneller, Wenrich and Prabhu in Their <u>Official</u> Capacities)**

94. Plaintiff incorporates the averments in the preceding paragraphs by this reference as if same were fully set forth herein.

95. Defendants, Bray, Girvin, Schneller, Wenrich and Prabhu, in their official capacities, violated Plaintiff's right to freedom of speech under the First Amendment by:

    A. Denying Plaintiff her BSE; and

    B. Refusing to issue the necessary documentation to PDE so Plaintiff can obtain her teaching certificate in Pennsylvania.

dismissal.

96. By prior decision and order dated January 30, 2008, this Honorable Court dismissed several other counts raised by Plaintiff against Defendants, including due process violations, intentional infliction of emotional distress, violation of state law and breach of contract. Plaintiff hereby preserves those issues for appeal, if necessary.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

    A. Injunctive relief against Defendants, Bray, Prabhu, Schneller, Wenrich and Girvin, in their official capacities, directing them to withdraw Plaintiff's BA and issue her the BSE she earned;

18

B. Injunctive relief against Defendants, Bray, Prabhu, Schneller, Wenrich and Girvin, in their official capacities, directing them to take all necessary steps to ensure PDE issues Plaintiff the initial teaching certificate she earned;

C. Wage loss damages against Defendants, Bray, Girvin, Schneller, Wenrich and Prabhu, jointly and severally, in their individual capacities, in excess of $150,000;

D. Compensatory damages, including general damages for pain and suffering, against Defendants, Bray, Girvin, Schneller, Wenrich and Prabhu, jointly and severally, in their individual capacities, in excess of $150,000;

E. Punitive damages against Defendants, Bray, Girvin, Wenrich, Schneller and Prabhu, in their individual capacities;

F. Reasonable costs and attorney's fees incurred in bringing this matter;

G. Pre- and post-judgment interest as allowed by law; and

H. Such further relief as the Court deems just and proper.

Dated: 3/7/08     **LAW OFFICE OF MARK W. VOIGT**

*/Mark W. Voigt/*
Validation of Signature Code #MWV6003

By: **MARK W. VOIGT, ESQUIRE**
Plymouth Meeting Executive Campus
Suite 400
600 West Germantown Pike
Plymouth Meeting, PA 19462
(610) 940-1709
(Attorney for Plaintiff)