```
 1      IN THE UNITED STATES DISTRICT COURT
 2         FOR THE LANCASTER DISTRICT
 3              OF PENNSYLVANIA
 4          * * * * * * * *
 5   STACY SNYDER,          *
 6       Plaintiff          *   Case No.
 7       vs.                *   07-1660
 8   MILLERSVILLE           *
 9   UNIVERSITY; J.         *
10   BARRY GIRVIN; DR.      *
11   JANE BRAY; DR.         *
12   VILAS A. PRABHU,       *
13       Defendants         *
14          * * * * * * * *
15
16              DEPOSITION OF
17              JUDITH WEINRICH
18              MARCH 7, 2008
19
20
21
22
23   Any reproduction of this transcript
24   is prohibited without authorization         EXHIBIT
25       by the certifying agency.                 "F"
```

Page 118

1  answered. She considered all
2  these documents.
3  ATTORNEY VOIGT:
4  Okay. Well, I'm
5  wondering whether she
6  considered particular portions
7  of these documents.
8  BY ATTORNEY VOIGT:
9  Q. You considered that Ms. Snyder
10  did a good job with purpose; correct?
11  A. I read and considered all the
12  observations that were then provided
13  to me.
14  Q. Turn to the next page, it says
15  April 18th. You considered this
16  document; correct?
17  A. Yes.
18  Q. And in this document, Mr.
19  Girvin gives Ms. Snyder ten glowing
20  remarks; correct?
21  A. Yes.
22  Q. And you considered each one of
23  these; correct?
24  ATTORNEY KRAMER:
25  Objection, asked and

Page 119

1  answered.
2  ATTORNEY VOIGT:
3  I'll give you a
4  standing objection to the
5  asked and answered.
6  ATTORNEY KRAMER:
7  Right. But they're
8  repetitive questions that
9  aren't getting anywhere.
10  BY ATTORNEY VOIGT:
11  Q. So you considered that Ms.
12  Snyder had made great improvement and
13  content; correct?
14  A. Yes.
15  Q. And you considered that Ms.
16  Snyder had excellent CIRQL unit
17  planning; correct?
18  A. Yes.
19  Q. You considered that Mr. Girvin
20  complemented Ms. Snyder for getting
21  this class under control. Do you see
22  that? Number one.
23  A. Yes. I considered all of the
24  statements he wrote and all of his
25  observations.

Page 120

1  Q. Turn to Exhibit 77. This is
2  Stacy's PRAXIS tests updated from
3  March of 2006, it looks like. Do you
4  see that?
5  A. Yes.
6  Q. And it looks like Stacy passed
7  her English Language, Literature
8  Composition Content and Knowledge
9  test; is that right?
10  A. Yes.
11  Q. Are you familiar with that
12  test at all?
13  A. No.
14  Q. Well, you would agree with me
15  that passing the PRAXIS test is a
16  prerequisite to becoming a teacher;
17  right?
18  A. It's necessary in Pennsylvania
19  to be certified, yes.
20  Q. And you would agree that the
21  PRAXIS test is recognized as an
22  appropriate test of the preparedness
23  of future high school teachers?
24  A. No. I wouldn't agree
25  with ---.

Page 121

1  Q. You don't agree with that?
2  A. I wouldn't agree that it's
3  sufficient. I would agree it's
4  considered ---.
5  Q. Okay. You wouldn't agree that
6  the PRAXIS test is an appropriate
7  test of the preparedness of future
8  high school teachers?
9  A. No. Not in and of itself, no.
10  Q. Do you know why the state
11  makes students take PRAXIS tests if
12  they're not appropriate ages ---?
13  ATTORNEY KRAMER:
14  Objection. That isn't
15  what she said.
16  BY ATTORNEY VOIGT:
17  Q. Well, you can answer.
18  A. It's one standardized measure.
19  Q. Turn to Exhibit 47, page five.
20  What's this document? Do you know
21  what this document is?
22  A. I believe it's the rubric for
23  the CIRQL project.
24  Q. Do you see the signature by
25  Mr. Girvin dated May 2 of 2006?

SARGENT'S COURT REPORTING SERVICES, INC.
814-536-8908

Electronically signed by Hilary Culver (401-056-551-4022)                    0165b08d-6581-45d4-9d6d-2ad145dfc8c7

| | Page 122 | | Page 124 |
|---|---|---|---|
| 1 | A. Uh-huh (yes). | 1 | photo and text; correct? |
| 2 | Q. Is that a yes? | 2 | A. Yes. |
| 3 | A. Yes. | 3 | Q. And you are not aware of any |
| 4 | Q. So this is the grading that | 4 | interference in student discipline at |
| 5 | Mr. Girvin gave Ms. Snyder for her | 5 | Conestoga Valley due to this photo |
| 6 | CIRQL project; correct? | 6 | and text; correct? |
| 7 | A. It's for a piece, so I'm not | 7 | A. No. |
| 8 | sure. | 8 | Q. And you do not consider this |
| 9 | Q. Did you consider the CIRQL | 9 | photo and text lewd or obscene, do |
| 10 | project grade that Ms. Snyder | 10 | you? |
| 11 | received when you made your decisions | 11 | A. No. |
| 12 | in May of 2006? | 12 | Q. And you reviewed also the text |
| 13 | A. Yes. | 13 | accompanying the photograph; correct? |
| 14 | Q. Turn to Exhibit 93. Do you | 14 | A. Yes. |
| 15 | recognize this photo? | 15 | Q. In the text, Ms. Snyder |
| 16 | A. Yes. | 16 | discusses her decision not to apply |
| 17 | Q. Did you see this photo in or | 17 | for a job at Conestoga Valley; |
| 18 | about May of 2006? | 18 | correct? |
| 19 | A. No. | 19 | ATTORNEY KRAMER: |
| 20 | Q. When did you first see it? | 20 | I'll object. It |
| 21 | A. I don't recall. | 21 | doesn't refer to Conestoga |
| 22 | Q. Turn to Exhibit 51. Have you | 22 | Valley. |
| 23 | ever seen this photo and text before? | 23 | ATTORNEY VOIGT: |
| 24 | A. Yes. | 24 | All right. |
| 25 | Q. When did you first see it? | 25 | BY ATTORNEY VOIGT: |

| | Page 123 | | Page 125 |
|---|---|---|---|
| 1 | A. May of 2006. | 1 | Q. It says, they keep asking me |
| 2 | Q. And how did you come to | 2 | why I won't apply there. Do you have |
| 3 | receive this photo and text? | 3 | any idea what that means? |
| 4 | A. It was one of the pieces of | 4 | A. No. |
| 5 | material that Mr. Girvin brought to | 5 | Q. Now, Stacy was set to receive |
| 6 | my office. | 6 | her BSE Degree at graduation |
| 7 | Q. When was that? | 7 | ceremonies on May 13 of 2006. Is |
| 8 | A. May of 2006. | 8 | that what your understanding was? |
| 9 | Q. All right. Now, as you sit | 9 | ATTORNEY KRAMER: |
| 10 | here today, you do not know of any | 10 | At what time? At what |
| 11 | actual disruption of the learning | 11 | point in time was she set to |
| 12 | environment at Conestoga Valley due | 12 | receive it? |
| 13 | to the photo and text; correct? | 13 | BY ATTORNEY VOIGT: |
| 14 | A. I didn't say that. | 14 | Q. Well, as of May 7th, 2006, Ms. |
| 15 | Q. I'm asking you that question. | 15 | Snyder was scheduled to receive her |
| 16 | A. I'm sorry. Can you repeat it? | 16 | BSE Degree at graduation ceremonies |
| 17 | Q. Okay. You do not know of any | 17 | on May 13, 2006; correct? |
| 18 | actual disruption of the learning | 18 | A. Assuming completion of all |
| 19 | environment at Conestoga Valley due | 19 | requirements, yes, that's my |
| 20 | to the photo and text, Exhibit P-51; | 20 | understanding. |
| 21 | correct? | 21 | Q. It says assuming completion of |
| 22 | A. I don't have any direct | 22 | all requirements. Before seeing the |
| 23 | knowledge, no. | 23 | photo and text, you were not aware of |
| 24 | Q. You would agree with me that | 24 | anybody that took any steps to deny |
| 25 | there's nothing threatening about | 25 | Ms. Snyder her BSE Degree; correct? |

Page 126

1  ATTORNEY KRAMER:
2  Objection as to the
3  characterization. You can try
4  to answer.
5  BY ATTORNEY VOIGT:
6  Q. Prior to May 8th of 2006, you
7  were not aware of anybody either at
8  Millersville or Conestoga Valley who
9  took any steps to deny Ms. Snyder her
10 BSE Degree; correct?
11 A. Yes.
12 Q. Is that ---?
13 A. Yes, that's correct.
14 Q. Okay. Prior to the incident
15 which came to light on May 8th of
16 2006, you personally had not taken
17 any steps to deny Ms. Snyder her BSE
18 Degree and teaching certificate;
19 correct?
20 ATTORNEY KRAMER:
21 Objection. She doesn't
22 have a right to Ms. Snyder's
23 teaching certificate.
24 ATTORNEY VOIGT:
25 All right.

Page 127

1  BY ATTORNEY VOIGT:
2  Q. You can answer.
3  A. Can you repeat the question?
4  Q. Sure. Prior to May 8th of
5  2006, you did not take any steps to
6  deny Ms. Snyder her teaching
7  certificate; correct?
8  ATTORNEY KRAMER:
9  Objection as to the
10 form.
11 BY ATTORNEY VOIGT:
12 Q. You can answer.
13 ATTORNEY KRAMER:
14 And it assumes facts
15 not in evidence, arbitrary to
16 the record.
17 ATTORNEY VOIGT:
18 I'll rephrase.
19 BY ATTORNEY VOIGT:
20 Q. Prior to May 8th of 2006, you
21 did not take any steps to deny Ms.
22 Snyder her BSE Degree; correct?
23 A. Yes. I hadn't had any
24 involvement with Ms. Snyder.
25 Q. After receiving the photo and

Page 128

1  text here --- well, strike that.
2  Describe for me how you
3  received this photo and text. What
4  time of day was it?
5  A. I don't recall what time of
6  day it was.
7  Q. All right. You said that Mr.
8  Girvin gave this photo and text to
9  you; is that correct?
10 A. Mr. Girvin brought a lot of
11 materials relating to her
12 performance. This was one document
13 in the materials that he had brought
14 to me.
15 Q. When was that?
16 A. I believe it was on a
17 Thursday.
18 Q. Thursday. Would that be May
19 8th?
20 A. I think so. The Thursday of
21 that week, I believe.
22 ATTORNEY KRAMER:
23 On here it says
24 Thursday, May 4th.
25 ATTORNEY VOIGT:

Page 129

1  I'll pull out my
2  calendar.
3  BY ATTORNEY VOIGT:
4  Q. All right. May 10th, 2006 was
5  a Thursday. Is that when you first
6  saw this photo and text?
7  A. I believe so.
8  Q. No, strike that. I didn't go
9  back far enough.
10 ATTORNEY KRAMER:
11 Off the record.
12 OFF RECORD DISCUSSION
13 BY ATTORNEY VOIGT:
14 Q. So the first time you saw this
15 was Thursday, May 11th of 2006?
16 A. Yes.
17 Q. How did it come to your
18 attention?
19 ATTORNEY KRAMER:
20 Objection, asked and
21 answered ---.
22 BY ATTORNEY VOIGT:
23 Q. Did you and Girvin have a
24 conversation about this?
25 A. We had a conversation about

33 (Pages 126 to 129)

Electronically signed by Hilary Culver (401-056-551-4022)    0165b08d-6581-45d4-9d6d-2ad145dfc8c7

1  the materials.
2  Q. Well, what was your reaction
3  when you saw this document?
4  ATTORNEY KRAMER:
5  Which document? This
6  one specific ---
7  ATTORNEY VOIGT:
8  P-51.
9  ATTORNEY KRAMER:
10 --- P-51?
11 ATTORNEY VOIGT:
12 Yes.
13 A. I don't recall.
14 BY ATTORNEY VOIGT:
15 Q. Did you take any action after
16 you saw the document, Exhibit P-51?
17 ATTORNEY KRAMER:
18 Objection. She didn't
19 see any of this document,
20 P-51. She said repeatedly
21 that she saw many materials.
22 ATTORNEY VOIGT:
23 Okay.
24 BY ATTORNEY VOIGT:
25 Q. After seeing P-51, did you

1  take any action?
2  ATTORNEY KRAMER:
3  Same objection. You
4  can try to answer.
5  A. Not specifically to this.
6  BY ATTORNEY VOIGT:
7  Q. Okay. Did you take any action
8  in general with regard to Stacy's
9  future and her upcoming graduation?
10 A. I scheduled a conference with
11 Stacy.
12 Q. Why did you do that?
13 A. To talk with her.
14 Q. All right. Turn to P-100.
15 OFF RECORD DISCUSSION
16 BY ATTORNEY VOIGT:
17 Q. Page six, paragraph 28.
18 ATTORNEY KRAMER:
19 Off the record.
20 OFF RECORD DISCUSSION
21 ATTORNEY KRAMER:
22 Just for the record,
23 I'm going to object to any
24 reference to the document
25 under the complaint. This is

1  the first time I have seen it.
2  It is not part of the official
3  record and has not yet been
4  accepted by the Court.
5  Nonetheless, you may choose
6  the aspect of the stipulated
7  facts of the alleged
8  allegations.
9  ATTORNEY VOIGT:
10 Well, just to respond
11 briefly, you were provided a
12 copy of it through the court's
13 electronic filing system at
14 about one o'clock last night.
15 And by agreement between you
16 and the Court and me and the
17 Court, the electronic filing
18 system is the official service
19 of process.
20 ATTORNEY KRAMER:
21 Yes. I simply said I
22 haven't seen it yet.
23 ATTORNEY VOIGT:
24 All right.
25 BY ATTORNEY VOIGT:

1  Q. Page six, paragraph 28. On or
2  about May 4, 2006, a CV
3  representative downloaded a
4  photograph and text. Do you know who
5  that representative was?
6  A. No.
7  Q. Did you speak with Ms.
8  Buffington about Ms. Snyder's
9  situation on or about May 8th, 2006?
10 A. No.
11 Q. Okay. Turn to paragraph
12 30 --- strike that.
13 Turn to Plaintiff's Exhibit
14 48. This is an e-mail from Anne
15 Buffington to Nicole Reinking, et
16 cetera. Did you receive this
17 document?
18 A. Not the first page, the
19 second.
20 Q. When did you receive the
21 second page?
22 A. It was one of the pieces of
23 information that Mr. Girvin provided
24 me with.
25 Q. Did you speak directly with

Page 190

1  degree; is she mistaken?
2  ATTORNEY KRAMER:
3  Objection. That's not
4  what Doctor Bray said.
5  BY ATTORNEY VOIGT:
6  Q. So you're saying that you do
7  not award BSE degrees; correct?
8  ATTORNEY KRAMER:
9  Objection, ---
10  BY ATTORNEY VOIGT:
11  Q. Personally?
12  ATTORNEY KRAMER:
13  --- asked and answered.
14  Let's move on, Mark. You're
15  not getting anywhere on this
16  line.
17  BY ATTORNEY VOIGT:
18  Q. Ms. Snyder recalls ---. Did
19  you discuss Ms. Reinking's list at
20  the meeting on April --- on May 15th?
21  A. Can you show me what the list
22  was?
23  Q. Exhibit 48. Do you recall
24  discussing that list?
25  A. No.

Page 191

1  Q. Do you recall Doctor Bray
2  saying during the meeting on May 15th
3  that the picture and caption promoted
4  underage drinking?
5  ATTORNEY KRAMER:
6  Object as to form.
7  Compound question.
8  BY ATTORNEY VOIGT:
9  Q. Do you recall Doctor Bray
10  saying during the meeting that the
11  picture promotes underage drinking?
12  ATTORNEY KRAMER:
13  Object as to form.
14  ATTORNEY VOIGT:
15  You can answer.
16  ATTORNEY KRAMER:
17  You can try to answer.
18  BY ATTORNEY VOIGT:
19  Q. Do you recall Doctor ---
20  A. No.
21  Q. --- Bray saying during the
22  meeting that the picture, Exhibit 51,
23  promotes underage drinking?
24  A. No, I do not.
25  Q. Do you recall Doctor Bray

Page 192

1  telling Ms. Snyder that she should
2  feel flattered because she had made
3  it the closest to graduation before
4  losing her BSE degree?
5  ATTORNEY KRAMER:
6  Object as to form. You
7  can try to answer ---.
8  BY ATTORNEY VOIGT:
9  Q. Do you remember ---?
10  A. She didn't say that.
11  Q. Did you say that?
12  A. No. No one said that.
13  Q. Do you remember Ms. Snyder's
14  mother being present during that
15  meeting?
16  ATTORNEY KRAMER:
17  Object as to form. She
18  said she did, so I object.
19  Asked and answered.
20  BY ATTORNEY VOIGT:
21  Q. Do you remember Ms. Snyder's
22  mother saying anything during the
23  meeting?
24  A. No.
25  Q. No? Do you remember Doctor

Page 193

1  Bray telling Ms. Snyder's mother that
2  she was the most calm parent that had
3  ever set foot into an appeal hearing?
4  ATTORNEY KRAMER:
5  Object as to form. You
6  can answer.
7  A. No, I don't remember.
8  BY ATTORNEY VOIGT:
9  Q. Turn to Exhibit 83. Did you
10  ever see this document before?
11  A. No.
12  Q. Let me represent to you that
13  these are signatures and comments by
14  Ms. Snyder's students. Would this
15  document have been significant to you
16  in making your decisions?
17  A. No.
18  ATTORNEY VOIGT:
19  Let's take a break.
20  SHORT BREAK TAKEN
21  BY ATTORNEY VOIGT:
22  Q. During this process, did you
23  ever consider allowing Ms. Snyder to
24  just repeat her student teaching
25  practical in another school?

Page 194

1  A. She could always have done
2  that.
3  Q. How would she have done that
4  through Millersville?
5  A. That's not what you asked me.
6  Q. Okay. At any time during the
7  events that transpired in May of
8  2006, did you consider allowing Ms.
9  Snyder, while still a student at
10 Millersville University, to repeat
11 her student teaching practical at
12 another school?
13 ATTORNEY KRAMER:
14 Object to form.
15 BY ATTORNEY VOIGT:
16 Q. At another public school?
17 ATTORNEY KRAMER:
18 Same objection. You
19 can answer.
20 A. That would --- Stacy could
21 have pursued that.
22 BY ATTORNEY VOIGT:
23 Q. How would have Stacy have
24 pursued that?
25 A. She could have applied to

Page 195

1  another institution.
2  Q. What other institution? Are
3  you talking about a college?
4  A. I thought that's what you were
5  talking about.
6  Q. No. At any time, did you
7  consider allowing Stacy to remain
8  enrolled at Millersville University,
9  take another semester and repeat her
10 student teaching assignment at
11 another high school?
12 A. Yes.
13 Q. Why did you not offer that to
14 Ms. Snyder?
15 A. I hadn't made any decision
16 before Stacy came and spoke with me.
17 And she participated in, you know,
18 offering me information.
19 Q. That wasn't responsive to my
20 question. Did you ever offer Ms.
21 Snyder the opportunity, while still a
22 student at Millersville University,
23 to come back for an additional
24 semester, go to another public high
25 school and repeat her student

Page 196

1  teaching assignment?
2  A. No.
3  Q. Why not?
4  A. It was my professional opinion
5  that there were difficulties with
6  both her knowledge of content, or her
7  lack thereof, and the types of
8  judgment and her inability as
9  documented by the evidence that was
10 in front of me, to successfully
11 implement the suggestions of a
12 cooperating teacher and her
13 supervisor.
14 Q. You mentioned content. Stacy
15 had been a student at Millersville
16 for almost four years; right?
17 A. I don't recall.
18 Q. All right. Would it not have
19 been possible for Millersville to
20 allow Stacy to take some remedial
21 content courses while still a student
22 at Millersville University and then
23 resume her student teaching practical
24 at another school?
25 A. I suppose it was possible.

Page 197

1  Q. But you rejected that?
2  ATTORNEY KRAMER:
3  No, that's not what she
4  said. If you know, Doctor
5  Weinrich, answer yes. If you
6  don't know, don't speculate.
7  A. Can you repeat the question?
8  BY ATTORNEY VOIGT:
9  Q. If Stacy was weak on content,
10 why didn't Millersville try to help
11 her and allow her to remain a
12 student, take some more remedial
13 content courses and then go back and
14 try her student teaching again?
15 A. It wasn't just the content.
16 Q. It was the professionalism;
17 right?
18 ATTORNEY KRAMER:
19 Objection. That's not
20 what she's saying.
21 BY ATTORNEY VOIGT:
22 Q. Well, if it wasn't just the
23 content, then what else was it?
24 ATTORNEY KRAMER:
25 She answered that.

Page 198

1  That's in all the evidence,
2  all that ---.
3  ATTORNEY VOIGT:
4  Okay. Well, if you
5  don't mind, Barry, I'll let
6  the witness answer ---.
7  ATTORNEY KRAMER:
8  I know. She already
9  asked --- she already answered
10  the question.
11 ATTORNEY VOIGT:
12 No, she didn't. She's
13 been beating around the bush
14 all afternoon.
15 ATTORNEY KRAMER:
16 She answered your
17 question. Try to answer it
18 again.
19 A. She had --- it was clear to me
20 that Stacy had not only received the
21 feedback from her supervisors and
22 cooperating teachers, she had
23 received it in writing. She had
24 received it throughout the placement,
25 early in the placement. At mid-

Page 199

1  point, her performance was failing.
2  She was not able, or at least did not
3  demonstrate that she could implement
4  the suggestions that they were making
5  to her in a variety of areas.
6  BY ATTORNEY VOIGT:
7  Q. And by the variety of areas,
8  you're talking about the list of
9  unprofessional behavior in the
10 classroom at P-48, page two?
11 ATTORNEY KRAMER:
12 Objection. That's not
13 what she said.
14 BY ATTORNEY VOIGT:
15 Q. Well, what variety of areas
16 are you talking about?
17 A. Many of the areas where she
18 was rated unsatisfactory on all of
19 those evaluations forms. Classroom
20 management was one area.
21 Preparation, content knowledge.
22 Q. Were you aware that Mr.
23 Girvin --- turn to Exhibit 58. Mr.
24 Girvin rated Ms. Snyder satisfactory
25 or competent in preparation; correct?

Page 200

1  ATTORNEY KRAMER:
2  If that's what the
3  document says.
4  BY ATTORNEY VOIGT:
5  Q. So content knowledge and
6  preparation was not a weakness?
7  A. That's not true.
8  ATTORNEY KRAMER:
9  Object.
10 BY ATTORNEY VOIGT:
11 Q. What part of this document do
12 you see as showing a weakness in
13 content knowledge, as per Exhibit 58?
14 A. I wasn't talking --- I wasn't
15 referring solely to this
16 document ---.
17 Q. Wasn't this the final
18 evaluation?
19 ATTORNEY KRAMER:
20 Object. You're getting
21 argumentative. Ask open-ended
22 questions. She'll give you an
23 answer.
24 BY ATTORNEY VOIGT:
25 Q. All right. What happened ---

Page 201

1  let's move on. There eventually was
2  an appeal in or about February of
3  2007; right?
4  A. Uh-huh (yes).
5  ATTORNEY KRAMER:
6  I'll object. Same
7  objection to all these
8  questions about the appeal.
9  They're not at all relevant in
10 this case.
11 BY ATTORNEY VOIGT:
12 Q. Did you have any conversations
13 with Doctor Prabhu prior to the
14 appeal?
15 A. No.
16 Q. Did you have any conversations
17 with Doctor Bray about Ms. Snyder
18 prior to the appeal?
19 A. No. I mean, not --- you know,
20 we had talked, of course, before the
21 appeal had been made to Doctor Bray,
22 but not prior to the other appeal.
23 Q. Did you have any input into
24 Doctor Prabhu's decision on the
25 appeals, Exhibit 63?

51 (Pages 198 to 201)

Electronically signed by Hilary Culver (401-056-551-4022)   0165b08d-6581-45d4-9d6d-2ad145dfc8c7