IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STACEY SNYDER** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-1660 |
| | : | |
| **MILLERSVILLE UNIVERSITY, et al.** | : | |
| Defendants | : | |

## ORDER

  AND NOW, this 2nd day of May, 2008, upon consideration of Plaintiff's Third Amended Complaint (Doc. No. 31), Defendants' Motion for Summary Judgment (Doc. No. 33), Plaintiff's Response (Doc. No. 34), and Defendants' Reply (Doc. No 38), it is hereby ORDERED that Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**, as follows:

1. Plaintiff, a former student at Millersville University, brings two claims under 42 U.S.C. § 1983 against five MU employees -- Defendants Dr. Jane S. Bray, J. Barry Girvin, Dr. Vilas A. Prabhu, Dr. Judith Wenrich, and Dr. Beverly Schneller -- in their individual and official capacities. Defendant Bray is the Dean of MU's School of Education. Defendant Girvin is a supervisor in MU's student teaching internship program. Defendant Prabhu is the Provost and Vice President for Academic Affairs at MU. Defendant Wenrich is the Director of MU's Field Services Department and the Department of Early Childhood

1

Education. Defendant Schneller is the Chairperson of MU's English Department.

2. Plaintiff alleges that Bray, Girvin, Prabhu, Wenrich, and Schneller are policy makers at MU, and that they violated her First Amendment free speech rights when they gave her a failing grade in her student teaching practicum after the text and a photo she posted on her Myspace webpage caused consternation at her placement school. Plaintiff seeks compensatory damages from each Defendant in his or her individual capacity.

3. Plaintiff also alleges that Bray, Girvin, Prabhu, Wenrich, and Schneller violated her First Amendment rights when they denied her a Bachelor of Science in Education degree and when they refused to issue documentation necessary for her to obtain her teaching certificate from the Pennsylvania Department of Education. Plaintiff seeks mandatory injunctive relief against Defendants in their official capacities, demanding that they issue her BSE and take all steps necessary to ensure that she obtains her teaching certificate.

4. Defendants have moved for summary judgment on both counts.

## I. Legal Standard

5. Upon motion of any party, summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). An issue is material only if it could affect the result of the suit under governing law. See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242 (1986). In deciding whether to grant summary judgment, I "must view the facts in the light most favorable to the non-moving party," and take every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005).

6. The opposing party must support each essential element with concrete evidence in the record. See Celotex, 477 U.S. at 322-23. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (restating Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976)). Summary judgment is appropriate if, after viewing all reasonable inferences in favor of the non-moving party, I determine that there are no genuine issues of material fact. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

7. In describing the background of this case, I have set out those record facts that are undisputed, and construed them in the light most favorable to Plaintiff. I have resolved all material factual disputes in Plaintiff's favor and construed those facts in the light most favorable to Plaintiff. I have disregarded those factual allegations that Plaintiff makes without any evidentiary support. See Celotex, 477 U.S. at 322-23.

**II.     Factual Background**

8.      From June 2002 until May 2006, Plaintiff attended MU, where she pursued a BSE degree which would allow her to seek teaching certification from the PDE.

9.      As a prerequisite to receiving her BSE, Plaintiff was required satisfactorily to complete a student teaching course. (Def. Br., Doc. No. 33, Ex. B, Millersville Guide to Student Teaching, at 9). During the Spring of 2006 she student taught at Conestoga Valley High School, where she was subject to CV's rules and regulations, including a requirement to "maintain the same professional standards expected of the teaching employees" at CV. (Id. at 7).

10.     As part of the student teaching course, Wenrich instructed Plaintiff not to post information about her students or about the cooperating teacher on her personal webpage. (Id., Ex. C at 210-211). Nevertheless, Plaintiff maintained a Myspace webpage on which she posted the following text on May 4, 2006:

> First, Bree said that one of my students was on here looking at my page, which is fine. I have nothing to hide. I am over 21, and I don't say anything that will hurt me (in the long run). Plus, I don't think that they would stoop that low as to mess with my future. So, bring on the love! I figure a couple of students will actually send me a message when I am no longer their official teacher. They keep asking me why I won't apply there. Do you think it would hurt me to tell them the real reason (or who the problem was)? (Def. Br., Doc. No. 33, Ex. C-10).

Plaintiff posted this text next to a photograph that showed her wearing a pirate hat and holding a plastic cup. The caption beneath the photo read "drunken pirate." Id.

11.     On May 8, 2006, Plaintiff's supervisor at CV called her at home and informed her that an

issue had arisen concerning her professionalism. The supervisor told Plaintiff not to return to CV for several days.

12. On May 9, 2006, Plaintiff sent an email to Girvin listing her concerns about the situation. (Def. Br., Doc. No. 33, Ex. C-15).

13. On May 10, 2006, Girvin prepared an MU student teaching evaluation in which he indicated that Plaintiff's performance was "competent" or "superior" in all categories except for her professionalism, which he rated "unsatisfactory." (Def. Br., Doc. No. 33, Ex. C-12). In Plaintiff's mid-placement MU student teaching evaluation, Girvin had indicated that Plaintiff showed "good"" or "reasonable" progress in most professionalism categories but required "additional attention" on her appropriate communication with students, families, supervisors, cooperating teachers, and other school personnel. (Def. Br., Doc. No. 33, Ex. C-6).

14. On May 11, 2006, Plaintiff met with Girvin and with her supervisors at CV, who showed her the photograph and text that they had downloaded from her MySpace webpage. (Comp., Doc. No. 31, ¶ 28-29). Girvin and Plaintiff's CV supervisors told Plaintiff that they considered her posting "unprofessional." Id.

15. Also on May 11, 2006, Plaintiff's CV cooperating teacher, Nicole Reinking, completed an MU student teaching evaluation rating Plaintiff's performance "competent" or "superior" in all categories except professionalism and some areas of preparation, which she rated "unsatisfactory." (Def. Br., Doc. No. 33, Ex. C-9). Reinking had criticized Plaintiff's

performance throughout her placement at CV. Nearly two months before this evaluation, on March 20, 2006, Reinking completed a mid-placement evaluation indicating that Plaintiff needed "significant remediation" in several areas, including: preparation, performance, and effect on student learning. Reinking also indicated, however, that Plaintiff's professionalism showed "reasonable" and "good" progress. (Def. Br., Doc. No. 33, Ex. C-5).

16. On May 12, 2006, Girvin prepared a final PDE evaluation in which he rated Plaintiff's professionalism "unsatisfactory." (Def. Br., Doc. No. 33, Ex. C-18 at 4). He gave Plaintiff satisfactory or superior ratings in all other categories. Id. In his mid-placement PDE evaluation on March 21, 2006, Girvin rated Plaintiff's professionalism "superior," while her overall performance was "satisfactory". (Def. Br., Doc. No. 33, Ex. C-7).

17. On May 12, 2006, Wenrich and Girvin met with Plaintiff and informed her that as a result of her unsatisfactory rating at CV, she was no longer eligible for a BSE degree or teaching certification and would instead graduate with a Bachelor of Arts degree in English. (Comp., Doc. No. 31, ¶¶ 43-45). That same day Schneller changed Plaintiff's general education credits to English Department credits.

18. Plaintiff appealed the matter to Bray who denied Plaintiff's appeal on May 15, 2006.

19. On February 21, 2007, at Plaintiff's request, Prabhu held an academic appeal hearing for Plaintiff. In a letter dated March 26, 2007, Prabhu denied the appeal, citing Plaintiff's "overall poor performance during student teaching" as the cause for her ineligibility to

receive teaching certification in Pennsylvania. Prabhu also determined that "Dr. Bray fairly resolved this academic issue by allowing [Plaintiff] to graduate on time with a Bachelor of Arts in English." (Def. Br., Doc. No. 33, Ex. J).

### III. Procedural History

20. On April 25, 2007, Plaintiff filed a Complaint against MU, Bray, Girvin, and Prabhu alleging, <u>inter</u> <u>alia</u>, three claims under 42 U.S.C. § 1983. On September 17, 2007, I dismissed Plaintiff's claims against MU with prejudice because actions against the state are barred by the Eleventh Amendment. (Doc. No 15). I also gave Plaintiff leave to amend her ambiguous claims against the named Defendants in their individual capacities. <u>Melo v. Hafer</u>, 912 F. 2d 628, 635 (3d Cir. 1990); aff'd 502 U.S. 21 (1991) (state officials may be sued in their individual capacities when the plaintiff seeks recovery from the officials' personal assets). Finally, I allowed Plaintiff thirty days to amend her request for relief against Bray, Girvin, and Prabhu in their official capacities. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, at 71 n. 10 (1989); <u>Melo</u>, 912 F. 2d at 635 (a state official may be sued under § 1983 in his or her official capacity when the plaintiff seeks only injunctive relief).

21. On October 12, 2007, Plaintiff filed her Second Amended Complaint. Plaintiff alleged that Defendants Bray, Girvin and Prabhu violated her First Amendment free speech rights and her Fifth and Fourteenth Amendment due process rights. Plaintiff also brought a

variety of state law claims against Defendants.

22. Defendants moved to dismiss on October 17, 2007. On January 30, 2008, I dismissed Plaintiff's due process claims, concluding that Defendants had afforded Plaintiff sufficient process. I also dismissed Plaintiff's state law claims with prejudice because they were barred by sovereign immunity and because they were not legally viable. (Doc. No. 23).

23. On February 25, 2008, I granted Plaintiff's request for leave to amend her Complaint a third time. Plaintiff filed her Third Amended Complaint on March 18, 2008, adding Wenrich and Schneller as Defendants. Seeking monetary damages from Defendants' in their individual capacities, Plaintiff claims that Defendants Bray, Girvin, Prabhu, Wenrich, and Schneller should be held liable for violating her First Amendment free speech rights. Basing a claim for mandatory injunctive relief on the same First Amendment violation, Plaintiff asks me to compel Defendants to award her a BSE and teaching credits.

24. On April 11, 2008, Defendants submitted a Motion for Summary Judgment. Plaintiff responded on April 18, 2008 and Defendants replied on April 22, 2008.

**IV.    Claims Against Defendants In Their Individual Capacities**

25. Defendants argue that Plaintiff's First Amendment claim fails because her webpage posting did not constitute a matter of public concern. I disagree. The First Amendment

protects speech relating to matters of both public and private concern. See Chaplinsky v. State of New Hampshire, 315 U.S. 568, 572 (1942); see, e.g., Saxe v. State College Area Sch. Dist. 240 F.3d 200, 206 (3d Cir. 2001) (First Amendment protects a wide variety of speech including speech on private matters that others may consider offensive).

26. In the instant case, Plaintiff's free speech claim triggers different tests, depending on whether she was a public employee or a student. Compare Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (public employees are not entitled to First Amendment protection unless their speech constitutes a matter of public concern such as political, social or other concern to the community) and Connick v. Myers, 461 U.S. 138, 147 (1983) (federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken when a public employee speaks upon matters only of personal interest) with Saxe, 240 F.3d 200, 211 (the First Amendment protects all student speech unless school officials show a specific and significant fear that the speech would substantially disrupt or interfere with the work of the school or the rights of other students) and Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 766-767 (9th Cir. 2006) (same).

27. Defendants next argue that as a student teacher Plaintiff was entitled only to the First Amendment protections of a public employee. See Pickering v. Bd. of Ed., 391 U.S. 563, 568 (1968) (public school teachers are public employees under the First Amendment). If Defendants are correct, Plaintiff must show that her speech constituted a matter of public concern.

28. Plaintiff counters that she was a student, and that Defendants violated her First Amendment rights when they reached beyond the scope of their authority and punished her for a private, off-campus activity. See Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511-513 (1969); see, e.g., Killion v. Franklin Reg. Sch. Dist., 136 F.Supp.2d 446, 457 (W.D. Pa. 2001) (school officials violated student's First Amendment rights when they suspended him for writing a derogatory document about a faculty member on his personal computer where the school failed to show that it caused an actual disruption). If Plaintiff is correct, Defendants bear the burden of showing that beyond "a mere desire to avoid . . . discomfort and unpleasantness," they had a constitutionally valid reason for regulating her speech. Tinker, 393 U.S. at 509.

29. The law is unclear as to the nature of First Amendment protection to which Plaintiff, as a student teacher, was entitled. Several courts have determined that the role of an apprentice or aide such as a student teacher is akin to that of a public employee. See Hennessy v. City of Melrose, 194 F.3d 237, 245 (1st Cir. 1999) (student teacher was a public employee in relation to the school where he was an apprentice); see also Watts v. Florida Int'l Univ., 495 F.3d 1289, (graduate student terminated from his placement in a hospital counseling practicum was a public employee); Andersen v. McCotter, 100 F.3d 723, 726 (10th Cir.1996) (student intern working for college credit in a penitentiary was a public employee in relation to the penitentiary officials who terminated him from the program). These cases address the relationship between an apprentice and the school or

practicum placement where he served as an aide, however. By contrast, Plaintiff has brought her First Amendment claims against five public officials at the University where she was enrolled as a student, not against officials at the school to which she was assigned as a teacher. She thus raises a more nuanced question: for First Amendment purposes, is a student teacher a student, a public employee, or an apprentice in relation to both the placement school and the school in which she is enrolled?

30. The question of whether Plaintiff was a student, an apprentice, or a public employee is obviously significant. Defendants have cited no case law -- and I have found none – indicating that this is purely a legal question. Rather, it appears to be a mixed question of law and fact to be resolved by the finder of fact. See Hennessy, 194 F.3d at 245 (examining factual context of practicum relationship before concluding that plaintiff was entitled only to the legal protections of a public employee). Because disputes of material fact remain respecting this question, I cannot grant Defendants' Motion for Summary Judgment on that claim. Celotex, 477 U.S. at 323 (the moving party bears the burden of showing the absence of any issue of material fact).

31. Defendants argue that regardless of the nature of First Amendment protection I afford Plaintiff's webpage posting, her claim nonetheless fails because Defendants would have taken the same steps without the posting. To support this contention, Defendants cite the following undisputed facts: Plaintiff received bad marks throughout her student teaching position; she had a difficult relationship with her CV supervisor; and she was directed not

11

to return to CV because of her unprofessional behavior. (Def. Br. Doc. No. 33 at 28-29).

32. Factual disputes remain, however, as to whether Plaintiff's webpage figured in Defendants' decision to rate her performance "unsatisfactory," terminate her from the Education program, and grant her a BA instead of a BSE. For example, it is unclear who saw the webpage posting, when Defendants saw the posting, and when Defendants made their decisions in relation to CV's own responses. Cf Watts, 495 F.3d at 1294 (no factual questions existed respecting the sequence of events where the graduate student was first terminated from his employment in the practicum, then failed the university course in which he was enrolled). On these disputed facts, I cannot conclude that a reasonable fact finder necessarily would find that Plaintiff's posting did not figure in Defendants' actions. Cf. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (summary judgment appropriately granted when the evidence is such that a reasonable fact finder could find only for the moving party).

33. Defendants argue in the alternative that even if I determine that Plaintiff was a student, her internet posting was not entitled to First Amendment protection because it promoted underage drinking. Morse v. Frederick, 127 S. Ct. 2618 (2007) (school principal did not violate a student's free speech rights when he suspended the student for waiving a banner that promoted drug use during school hours at a school sponsored event). Defendants appear to argue that under Morse Plaintiff's actions should be evaluated under a new category of school speech cases -- one that allows action against student speech that

school officials perceive as encouraging alcohol or drug usage. As Defendants concede in their brief, however, it is unclear that <u>Morse</u> has established such a category. (Def. Br., Doc. No. 33 at 35). Moreover, the facts of <u>Morse</u> are distinguishable from those in the instant case. Accordingly, I decline to evaluate Plaintiff's case under <u>Morse v. Frederick</u>.

34. Finally, Defendants argue that even if Plaintiff can establish a free speech violation, her claims for damages against Bray, Girvin, Prabhu, Wenrich, and Schneller in their individual capacities are barred by qualified immunity because the law did not provide Defendants with a "fair warning" that their conduct would violate the First Amendment. I agree.

35. The defense of qualified immunity recognizes that subjecting public officials to personal liability for their discretionary actions would distract those individuals from their public duties, hinder their discretionary actions, and deter people from pursuing public service positions. <u>Ryan v. Burlington County, N.J.</u>, 889 F.2d 1286, 1292 (3d Cir. 1989). Accordingly, the doctrine of qualified immunity seeks to balance a public official's discretionary function to perform his or her duties against the public's interest in "vindicating important federal rights." <u>Id.</u>

36. To determine whether Plaintiff's claims against Defendants are barred by qualified immunity, I must first consider whether the facts alleged, taken in the light most favorable to Plaintiff, show that each Defendant's conduct violated a constitutional right. <u>Grant v. City of Pittsburgh</u>, 98 F.3d 116 (3d Cir. 1996) (district courts analyze the specific conduct

of each official with respect to the constitutional right at issue). I must then ask whether Plaintiff's First Amendment rights were "clearly established" such that a reasonable public official would have known that his conduct violated those rights. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

37. As discussed above, given the material factual disputes, I cannot determine whether Defendants violated Plaintiff's First Amendment rights. Even if I were to resolve all those disputes in Plaintiff's favor, determine that she was a "student," and rule that Defendants violated her First Amendment rights, however, I certainly could not conclude that Plaintiff's First Amendment rights as a student teacher were "clearly established." As I have already explained, there is little case law describing the level of First Amendment protection to which a student teacher is entitled.

38. The undisputed evidence shows that MU had failed other students from the teaching practicum after they had been barred from entering the cooperating school. (Def. Br. Doc. No. 33, Ex. A, Declaration of Juidth Wenrich, ¶ 9). There was no suggestion that these student teachers were treated unconstitutionally. Moreover, Plaintiff argues in her own brief that the question of her status turns on a multi-layered interpretation of the Pennsylvania Statutory Construction Act, State Board of Education Regulations, and the Pennsylvania Public School Code. (Pl. Br. Doc. No. 34, at 22-23). This argument undermines the very idea that her student teacher status afforded her clearly established rights. Rather, as the Eleventh Circuit recently held, the "rights of graduate students in a practicum" are far from clear. See Watts, 495 F.3d at 1293 (granting qualified immunity

14

to university defendants sued in their individual capacities).

39. In these circumstances, I cannot conclude that Plaintiff's First Amendment rights were clearly established such that a reasonable public official would have known that Defendants' actions violated those rights. Kopec, 361 F.3d at 776. Accordingly, I **GRANT** Defendants' Motion for Summary Judgment based on qualified immunity on Plaintiffs' § 1983 claims against Defendants in their individual capacities.

### V.     Claims Against Defendants In Their Official Capacities

40. Factual disputes must be resolved before I can determine whether Defendants violated Plaintiff's First Amendment free speech rights by denying her a BSE and by refusing to issue the documents she needed to obtain her teaching certificate.

41. Defendants argue that regardless of any First Amendment violation, injunctive relief is improper to remedy past violations that are not ongoing. I disagree. Under § 1983, a Plaintiff raising a First Amendment claim may seek related injunctive relief -- such as reinstatement to remedy past violations -- against state actors in their official capacities. See Melo, 912 F.2d at 630 (plaintiffs properly sought reinstatement in a § 1983 action against a public official in her official capacity for wrongful termination in violation of their First Amendment and due process rights); see also Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985) (plaintiff entitled to reinstatement if he establishes wrongful termination).

42. In the instant case, Plaintiff seeks a mandatory injunction, requiring the issuance of her BSE and her teaching certificate. Such relief is akin to the requests for reinstatement following wrongful termination in <u>Melo</u> and <u>Dwyer</u>.

43. Accordingly, I **DENY** Defendants' Motion for Summary Judgment respecting Plaintiff's claim for injunctive relief.

## VI. Conclusion

44. In conclusion, I **GRANT** Defendants' Motion, and **dismiss with prejudice** Plaintiff's First Amendment claims against Defendants in their individual capacities. I **DENY** Defendants' Motion respecting Plaintiff's First Amendment claims and request for injunctive relief against Defendants in their official capacities.

        **AND IT IS SO ORDERED.**
        /s Paul S. Diamond
        _____
        **Paul S. Diamond, J.**